UNITED STATES of America, Appellee,

v.

Nicholas D'ANDREA, Appellant.

No. 73–1890.

United States Court of Appeals, Third Circuit.

Argued Feb. 26, 1974.

Decided April 24, 1974.

Louis Lipschitz, Lipschitz & Danella, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Victor Schwartz, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before HUNTER and WEIS, Circuit Judges, and MILLER, District Judge.

## OPINION OF THE COURT

PER CURIAM:

This is the appeal of a conviction for various criminal violations of the federal income tax laws.[1] While appellant alleges numerous grounds for reversing the district court's verdict, the only claims that require discussion are: 1) that the district court erred in refusing to declare a mistrial because of prejudice that resulted from the publication, during trial, of a news article dealing with appellant's indictment for another offense; and 2) that the district court used improper procedures in dealing with appellant's claim that his telephonic communications were subjected to illegal surveillance by the government and that it or its fruit was used against him. We have concluded that these two claims, and the others raised by

---

1. The charges upon which the conviction was based involved the evasion of income taxes for the years 1966 and 1967; the filing of a false and fraudulent tax return for 1967; the filing of a perjured tax return for 1967; and aiding another in the preparation and filing of a false and fraudulent tax return for 1966.

**1172**

appellant,[2] are not meritorious and affirm the judgment of the district court.

**I**

■ Appellant's claim of improper publicity rests on the publication of an article in the Philadelphia Daily News after the conclusion of all evidence in the case but prior to its submission to the jury. The article reported appellant's indictment (in a different jurisdiction) on an assault charge and recited the circumstances of that alleged offense. It also referred to appellant as a "gang figure" (in the headline), and as a "reputed underworld figure" (in the body of the article). One juror and one alternate juror indicated, upon questioning by the district judge, that they had read the article.[3] Appellant claims that these circumstances required the declaration of a mistrial. We cannot agree.[4]

■ The crucial question in cases such as this is the degree of prejudice created by the improper publicity, since

a new trial is required only when substantial prejudice has occurred.[5] It is our opinion that under the circumstances involved in this case the requisite prejudice did not occur. To begin with, the arrest giving rise to the indictment reported in the article and the facts that gave rise to it had already been presented to the jury.[6] As a result, the possible prejudice was restricted to the characterizations of appellant that appeared in the article.

In addition, while these statements did have prejudicial potential, it was clearly less serious than the prejudice that occurred in United States ex rel. Doggett v. Yeager, 472 F.2d 229 (3d Cir. 1973). In that case, *several* newspaper articles reported the defendant's likely involvement in an escape attempt just prior to trial; an act which strongly implied consciousness of guilt on the part of the defendant with regard to the very offense for which he was being tried. Further, one article (that was read by several of the jurors) referred

---

2. These other claims are:
   1) that the district court erred by allowing evidence of transactions in years other than 1966 and 1967;
   2) that the district court erred in permitting the cross-examination of character witnesses a) relating to the endorsement of checks by appellant, and b) regarding the claim that appellant had assaulted and threatened an individual and stolen his property;
   3) that the district court erred in permitting evidence about the procedures involved in the institution of the prosecution;
   4) that the district court erred in not granting a new trial because of misconduct of the prosecutor;
   5) that the district court committed error in disclosing that defense counsel objected to the court's jury charge.

3. Though as indicated *infra*, page 6, they each assured the district court that this would not affect their ability to render a fair and impartial judgment.

4. Appellant also contends that the prosecution arranged for the publication of this article. However, since no evidence was offered to support this claim, it must be rejected.

5. In some cases, the publicity that occurs is so fundamentally prejudicial that actual

prejudice is presumed as a matter of law. In these cases, the mere occurrence of the event requires declaration of a mistrial. *See, e. g.,* Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) (two key prosecution witnesses acting as attendants for the jurors throughout the trial); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (motion picture of defendant "confessing" to the sheriff shown on local television).

Where the improper publicity is of a less serious nature however, no similar presumption operates. In these cases, the appellate court (like the district court) must review the circumstances surrounding the exposure of the jury to the publicity and order a new trial only when substantial prejudice has occurred. *See* United States ex rel. Doggett v. Yeager, 472 F.2d 229, 239 (3d Cir. 1973); Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). A comparison of the facts of this case to the facts of *Turner, Rideau,* and the cases which follow their approach make it clear that this case falls in this latter category; that is, substantial prejudice must be shown.

6. While appellant's brief claims that the earlier admission of this evidence was itself improper, this claim is without merit.

to defendant's withdrawal of an earlier guilty plea with regard to the offense being tried. In this case, no such directly incriminating information was contained in the article.

Moreover, the article involved here appeared at a time when its prejudicial impact was likely to be minimal. It was not published until the 35th day of trial, and by that time the jury had already heard all the evidence, including extensive testimony by the appellant himself. As a result the jurors were thoroughly familiar with the defendant and the case, and were less likely to be influenced by the brief characterization of the defendant that appeared in the Daily News article.[7]

■ Finally, we note that the juror and alternate juror who read the article were instructed by the district court to disregard the article in their deliberations and each assured the court that it would not affect his ability to render a fair and impartial judgment.[8] In view of all these circumstances, we do not believe that the publicity that occurred requires us to order a new trial.

## II

■ The second contention of appellant that warrants some discussion involves the claim that his telephone conversations were subjected to illegal electronic surveillance by the United States government and that this surveillance or its fruit was used against him in this proceeding.[9] When such a claim is made the government is required to "affirm or deny the occurrence of the alleged unlawful act." 18 U.S.C. § 3504(a)(1) (Supp.1973), and in this case the government did deny that it engaged in electronic surveillance. However, appellant claims that the denial was insufficient, and that therefore a hearing on this issue should have been held.

This claim is not meritorious. In a letter dated June 21, 1973, Fred B. Ugast, Acting Assistant Attorney General, indicated that a check had been made of the appropriate agencies [10] and that appellant had not been subjected to electronic surveillance by the government.[11] Under the law of the circuit, this denial is sufficient and eliminates the necessity for a hearing.

---

7. In contrast, the first article to appear in *Doggett* was published two days after the trial began.

8. We note that the district court's examination of the juror and alternate juror on the effect of the article took place in open court, despite the indication in United States ex rel. Doggett v. Yeager, *supra*, that it is better to conduct such an examination out of the presence of the other jurors. 472 F.2d at 234–235. While we adhere to the view expressed in *Doggett* as a general rule, we do feel that cases will arise where en banc examination is preferable and should be permitted.

This is such a case. The district court apparently refrained from an extensive individual interrogation because it felt that that process would only emphasize the incident and that ultimately it was likely to do more harm than good. This decision was proper for two reasons. First, since the likelihood of serious prejudice from the article itself was not great, the decision not to emphasize it was reasonably calculated to minimize the overall possibility of prejudice. Second, the defense itself never sought individual interrogation of the jurors. Instead it seemed to agree with the court that the use of that

process presented a greater danger of prejudice. *Appendix to Briefs* at 92a; Opinion of district court, *Appendix* at 125–26a. Under these circumstances, we cannot say that the manner in which the examination of the jurors took place was error.

9. This contention was made by a motion that was filed on the 32nd day of trial and reads, in pertinent part, as follows:

"Upon information and belief, the defendant represents that the United States of America, through its agents and employees, caused certain telephonic communications of defendant to be intercepted in violation of the defendant's rights under the Constitution and laws of the United States."

10. The agencies contacted were the Federal Bureau of Investigation, the United States Secret Service, the Bureau of Alcohol, Tobacco and Firearms, the Inspection Service of United States Postal Service, the Bureau of Narcotics and Dangerous Drugs, the Bureau of Customs and the Internal Revenue Service.

11. Affidavits were also filed by the prosecutor and the various investigators (seven in all) who had been involved in the case.

■ Since appellant's allegation of illegal electronic surveillance was not supported by any facts and was thus totally conclusory in nature, this case is controlled by In re Horn, 458 F.2d 468 (3d Cir. 1968). In that case, as in this one, appellant urged the necessity for a hearing when the government relied solely upon a denial of electronic surveillance. This court held, "that since petitioners had not presented 'any evidence demonstrating that these representations by the Government [were] false,' a hearing was not warranted." *Id,* at 471 (citations omitted). Since appellant in this case has presented no evidence at all with regard to the alleged surveillance, *a fortiori* it has not presented evidence that demonstrates that the government's representation is false. As a result, *Horn* is controlling precedent and no hearing is required.[12]

■ Appellant also contends that the court acted improperly when it permitted the government to make an *ex parte, in camera* presentation with regard to the claim of illegal electronic surveillance.[13] Once again, his contention lacks merit.

As Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) makes clear, there are some situations in which an adversary proceeding is required in order to protect a defendant's fourteenth amendment rights. In that case, the Court barred the district court from reviewing illegally obtained material *in camera* in order to judge its "arguable relevance" to the case presented by the government. Its conclusion was based on the belief that the complexity of the task made the safeguard of an adversary proceeding necessary.[14]

In other situations, however, where similar complexity is not presented *in camera* proceedings are permissible. Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969) (Stewart, J. concurring). This case clearly falls into this latter category. The *in camera* proceeding here did not deal with the question of whether existing illegal taps tainted the proceedings. Instead, it dealt with the prior question of whether the alleged illegal surveillance had occurred at all. This is the same question that was the subject of an *in camera* hearing in *Taglianetti,* and in that case the Court held that the issues presented were not complex enough to require the safeguards of an adversary proceeding as a matter of law. 394 U.S. at 317–318, 89 S.Ct. 1099. We feel that the same conclusion is warranted here.

The judgment of the district court will be affirmed.

---

They each denied the use of electronic surveillance or its fruit in investigating and prosecuting the case.

12. Appellant also suggests that the denial is insufficient because it was not presented by affidavit. To support this view, he cites to In re Korman v. United States, 486 F.2d 926 (7th Cir. 1973). While that decision does adopt an affidavit requirement as the rule for that Circuit, it does so within the context of a case in which the allegations of illegal wiretapping were supported by facts which plausibly established the suspicion of illegal conduct. While a more formal denial may have value in that situation (and may indeed be *preferable* in all cases) we refuse to *require* it in cases such as this, where the appellant has come forward with no more than a bald accusation of illegality.

13. A transcript was made of this proceeding but it was impounded by the district court.

14. As the Court in that case stated,

"An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller of the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the Government's case."