**In the Matter of the GRAND JURY.**

**In re Veronica VIGIL, Witness-Appellant.**

**No. 75–1631.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 18, 1975.

Decided Oct. 2, 1975.

Rehearing Denied Oct. 30, 1975.

Ruth Buechler, Denver, Colo. (Paul S. Salas, Fort Collins, Colo., on the brief), for witness-appellant.

J. Terry Wiggins, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for the United States.

Before BREITENSTEIN, McWIL-LIAMS and DOYLE, Circuit Judges.

PER CURIAM.

The witness-appellant, Veronica Vigil, seeks review and reversal of an order of the United States District Court for the District of Colorado finding her in civil contempt pursuant to 28 U.S.C. § 1826(a), based on her refusal to testify before the grand jury. Numerous reasons are advanced in support of her demand for reversal and remand. She contends:

1. That there was unlawful electronic surveillance which justified her refusal to answer questions.

2. That she had sufficient cause to refuse to testify because her husband was the object of the inquiry and she was compelled to testify against him.

3. That she was deprived of due process of law, first, because of inadequate notice of the hearing; second, by denying her reasonable time to obtain witnesses and otherwise prepare herself; and, third, by permitting some of the proceedings to take place in private.

4. That the grand jury proceedings were illegal because the purpose of the investigation was not legitimate.

5. The grand jury was not drawn from a fair cross section of the community.

6. The appellant was denied the right to have counsel present in the grand jury room.

7. The order compelling the appellant to testify pursuant to 18 U.S.C. § 6002 in terms of the so-called use immunity statute failed to protect her from testimonial self-incrimination.

When appellant was called before the grand jury on August 19, 1975, she refused to answer questions propounded to her. The court on the same date, after a hearing and on the basis of an application pursuant to 18 U.S.C. §§ 6002 and 6003, ordered her to answer the questions. On August 22, 1975, appellant again appeared before the grand jury and she again refused to answer the questions which she had been ordered to answer. Her continued refusal to answer led to the adjudication that she was in civil contempt of the court and to her confinement.

The witness was first served with a subpoena on July 22, 1975, directing her to appear before the grand jury on August 19, 1975. According to the government's brief, present counsel for appellant were in the case as early as August 14, 1975, and on August 18 filed various motions, memoranda and affidavits on behalf of appellant.

On August 19, hearings were held on the appellant's numerous motions, including grand jury selection, the right to have an attorney present in the grand jury room, and her right to compel disclosure of electronic surveillance.

On the latter motion extensive hearings were had dealing with whether there had been or had not been such surveillance. Testimony of the agents involved in the investigation denied any electronic surveillance. The government through the United States Attorney also denied any electronic surveillance in the case. The court ruled that there was no probability or even a fair possibility that there had been any interception of communications.

On the occasion of appellant's being called before the grand jury, she refused to answer *any* questions except to give her name. Some 14 written questions were submitted to her; she was allowed to leave the grand jury room to confer with her counsel as to each question. She refused to answer all of the 14. After this she appeared before the district court and the application and order for use immunity were made and granted followed by a further opportunity to answer questions. The immunity had no effect on her giving answers; she now made it plain to the court that she would continue her refusal, relying on the privileges which she had asserted. It was only after full opportunity to testify had been given that she was adjudged in contempt of court.[1]

On August 22, 1975, a final opportunity to answer the questions was extended. This took place at a hearing in the presence of the grand jury. The transcript reflecting the questions asked and the answers given was read by the reporter. In response to this final effort, she responded that although she did not mean any disrespect, she intended to "rely on privileges that have been raised before this court." Thereupon, the trial court noted that it had previously ruled that

1. The appellant was adamant in refusing to answer any question other than her name. Even after immunity had been extended and she had been ordered by Chief Judge Arraj to answer, she persistently conferred with her attorney and after having done so refused to answer on the ground that she relied on her Fifth Amendment right not to incriminate herself; on the ground that the question was based on information obtained through electronic surveillance or an illegal search under the Fourth Amendment, or "on the basis of all of the objections raised and motions filed in this case," or on the ground that she believed the inquiry to be directed at a person with whom she had had a marital relationship. She also invoked her right to counsel under the Sixth Amendment and invoked directly her First Amendment rights, presumably based upon alleged electronic eavesdropping.

the claims of privilege were not legal claims and that the one against self-incrimination "was adequately provided for by the court's order of immunity." It proceeded to enter its judgment finding the witness "to be in civil contempt of this court and I commit you to the custody of the Attorney General of the United States or his duly authorized representative until such time as you will comply with the order of this court and answer the questions of the grand jury or until the further order of this court."

The cause came to us on appeal soon after the trial court's adjudication. By order of September 9, 1975, we denied appellant's request for a stay pending appeal, but accelerated the appellate hearing. Oral arguments were had on September 18, 1975. The requirement contained in 28 U.S.C. § 1861, that any appeal from an order of confinement under § 1826, *supra*, is to be disposed of not later than 30 days from the filing of the appeal, demanded the giving of a decision on September 19, 1975. On that day we affirmed the judgment by minute order. This present opinion supplements the September 19, 1975 order.

## I.

■ The issue of alleged illegal telephone surveillance arises pursuant to 28 U.S.C. § 1826(a),[2] which section authorizes a court to confine a witness to jail who has refused to answer without "just cause." If there has been prior illegal and relevant electronic surveillance, just cause not to answer exists. *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). The Supreme Court there recognized illegal electronic surveillance as a defense to a contempt proceeding under the above statute. Illegal interception of telephone conversations had occurred, and hence the issue whether "just cause" for the refusal of the witnesses to answer was presented. Pointing out that § 1826(a), *supra,* limits the adjudication of contempt to the case of a grand jury witness who has refused without just cause shown to comply with an order of the court to testify, the Court held where there is a showing that the interrogation would be based upon the illegal interception of the witness' communications, there is just cause which precludes adjudication of contempt. The Court reasoned that the prohibitions in Title III of the Omnibus Crime Control Act and, particularly, 18 U.S.C. § 2515, bar the use of contents and fruits of illegal interceptions, and that it followed that all of the matters other than those authorized to be used (that is, all matters barred by 18 U.S.C. § 2515) were entitled to be protected.

Our questions whether electronic surveillance actually existed and the sufficiency of the witness' claim as to electronic surveillance did not have to be considered by the Court in *Gelbard.* Nor did it have to rule on the issue of sufficiency of the government's denial under 18 U.S.C. § 3504(a)(1).[3]

**2.** This sub-section provides as follows:

Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. * * *

**3.** This section provides:

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

(1) Upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act.

The concurring opinion of Justice White did state that the existence of relevant electronic surveillance constituted a defense to proceedings under § 1826(a) and added:

Of course, where the Government officially denies the fact of electronic surveillance of the witness, the matter is at an end and the witness must answer.

408 U.S. at 71, 92 S.Ct. at 2373.

■ We consider then, first, the adequacy of the proof in support of appellant's charges that the government has engaged in electronic surveillance and, second, the sufficiency of the government's denial. We have concluded that the appellant's evidence to establish the existence of electronic surveillance is grossly lacking and, at the same time, that the government's denial was sufficient to dispel any suspicions raised by appellant's papers and thus it satisfied the demands of § 1826(a), *supra*.

## A.

### THE INSUFFICIENCY OF THE EVIDENCE TO ESTABLISH THE EXISTENCE OF ELECTRONIC SURVEILLANCE

The evidence relied on is contained in affidavits of counsel for appellant and the witness, with most of the information coming from appellant's counsel.

Counsel's affidavit said:

That in the spring of 1974, two men approached appellant seeking permission to repair the telephone in her residence. In fact, she had no telephone;

At various times during the spring of 1974, automobiles of the Alcohol, Tobacco and Firearms Department were seen in the parking lot near the residence of appellant;

In August 1975, after two attempts were made to call a witness from Alamosa (Colorado), an operator came on the line and asked the affiant to dial again. After a third unsuccessful effort, the call had to be placed through an operator;

In recent calls from the affiant's residence and business telephones, there has been substantial delay between dialing and the ringing sound. During a recent conversation with the attorney, a loud hum was heard during the conversation;

An appointment was made, over the attorney's telephone, with a scientific expert. Despite the fact that only the attorneys involved and the expert knew of the appointment, an unknown person called and cancelled the appointment.

The affidavit of *appellant* set forth her belief that the questions asked her before the grand jury were based either directly or indirectly on illegal electronic surveillance; this belief, according to the affidavit, was based on an analysis of the questions asked on the occasion of her August 19 appearance. No specific evidences were offered.

A further affidavit of counsel filed August 22 described additional difficulties with her telephone—difficulties in dialing local numbers in Denver, hearing a double beep, having a male voice come on the line and ask what number she was calling and being informed that the number was a working number and to dial again. In several instances the telephone gave off a hollow sound when there was rapid dialing. If the number was dialed slowly, a connection was made. "I believe this to indicate that a pen register or similar instrument is recording the numbers I dial."

The reason for the insufficiency of all this evidence is that it does no more than describe the ordinary experiences which are encountered by the telephone user from time to time in his daily life, and it is lacking in any concrete evidences or even suggestions of surveillance. There is a dearth of evidence to show that the experiences, either singly or as a whole, establish that electronic surveillance took place. At the most, its capacity is limited to exciting suspicion in the affiants' minds.

## B.

### ADEQUACY OF THE GOVERNMENT'S DENIAL

■ Although we do not consider the proof in support of the witness' claim to be substantial, we must nevertheless consider the sufficiency of the government's denial. The decisions tend to focus on the denial rather than the claim, and this is true in some instances even though the charge that electronic surveillance had taken place was no more than a naked, unsupported allegation. See *United States v. Fitch*, 472

F.2d 548 (9th Cir.), *cert. denied sub nom., Meisel v. United States,* 412 U.S. 954, 93 S.Ct. 3003, 37 L.Ed.2d 1007 (1973), and *United States v. Stevens,* 510 F.2d 1101 (5th Cir. 1975). *Cf. Korman v. United States,* 486 F.2d 926 (7th Cir. 1973), in which a letter from the Assistant Attorney General was introduced denying that telephone conversations had been monitored. The mandate was stayed for 30 days and the government was required to file an affidavit of denial sworn to by the prosecutor in charge of the investigation. *See also In re Mintzer,* 511 F.2d 471 (1st Cir. 1974), rejecting the necessity (in discharge of the duty to affirm or deny) to search central federal records and all state records, and also rejecting the argument that a broad inquiry had to be carried out as a part of the affirm or deny duty.

Additional testimony was presented in support of the government's denial. Called as witnesses were a special agent for the Bureau of Alcohol, Tobacco and Firearms, United States Treasury Department, and a supervisory special agent for the Federal Bureau of Investigation in charge of security work for the Denver office.

Robert G. Breese, Bureau of Alcohol, Tobacco and Firearms, stated that there had been no such surveillance and that he was the special agent in charge of the case in which Ms. Vigil was involved. He added that he was not aware of any surveillance on the part of the state, and that the FBI was the only other agency which was involved in the investigation of the bombings relative to Ms. Vigil. He said that he understood that the Assistant United States Attorney was seeking information as to electronic surveillance or eavesdropping either with or without a court order. On cross-examination, he added that he had examined the files and that no electronic surveillance of any kind was shown to have been carried out.

Boyd D. Adsit, the special agent for the FBI and supervisor of security work in the Denver office, including investigation into bombing incidents, testified

that any electronic surveillances with or without a court order in reference to investigations of specific bombing incidents would have been under his supervision.

Although he had not been in a supervisory position for the entire eight years that he had been here (in the Denver office), he testified that he would have known of such surveillances during that period, and beginning in 1974 there had not been any court ordered electronic surveillances, telephone communications or personal communications with reference to the witness, Veronica Vigil; that had there been electronic surveillance in connection with bombings in other parts of the state, he would know about it; that there were none. He was asked on cross-examination whether he had inquired of the custodian of the record or file having to do with electronic surveillances; he said that he had not; that it was unnecessary to so inquire because he knew that there had not been any.

The Assistant United States Attorney advised the court that every agency of the United States which had had anything to do with the case assured him that there had not been any electronic surveillance either by court order or otherwise to the best of their knowledge. The court, however, said that it considered this insufficient, and as a result the witnesses who were mentioned above testified.

Mr. Wiggins (the mentioned assistant) also has assured *this* court that there has been no electronic surveillance.

Bearing in mind the extreme difficulty of proving a negative such as that before us, that no surveillance has been carried out, we conclude from a consideration of the testimony of the witnesses together with the statements of the Assistant United States Attorney that no electronic surveillance, authorized or unauthorized, of any kind or character, has been carried out. Since there had been no further information offered which casts a doubt on these denials, we unhesitatingly hold that the denial satisfies the relevant statute, 18 U.S.C.

§ 3504(a)(1), which, as we have noted, requires the opponent of a party claiming that evidence is admissible to affirm or deny the underlying unlawful act. While the provision does not spell out what constitutes a denial, we are of the opinion that the denial is sufficient in the circumstances of this case.

*United States v. Stevens*, 510 F.2d 1101 (5th Cir. 1975) considered a general or non-specific denial sufficient where given in response to a general unsubstantiated allegation. We have more than a general denial. In addition to the United States Attorney's denial, we have sworn testimony of the two officers, all of this addressing the issue with specificity. In our view, testimony in court carries more weight than conclusory statements in affidavits for the manifest reason that it can be subjected to cross-examination. Under the circumstances, we see no need for the government to make a broad scale inquiry so as to negative every possible suggestion including those which have not been made. *Cf. Bufalino v. Immigration and Naturalization Service*, 473 F.2d 728 (3rd Cir. 1973).[4]

Appellant relies on the decision of the Ninth Circuit in *United States v. Alter*, 482 F.2d 1016, 1026 (9th Cir. 1973). There the court considered at some length the necessary requirements in support of the witnesses' claims that electronic surveillance had taken place and concluded that the district court had erred in holding sufficient the showing made by the government. The court also ruled that the affidavits offered by the witness were sufficiently concrete and specific to make a prima facie showing; that this shifted the burden to the government "squarely to affirm or deny those charges." The affidavit of the Justice Department lawyer seeking to refute the witnesses' showing was ruled insufficient. The remand had a direction that the government "may file a responsive, factual, unambiguous and unequivocal affidavit." Herein lies the difference between *Alter* and our case. Here the U. S. Attorney's showing in support of the government's denial, while not wholly unambiguous, was in our view substantial, factual, unequivocal and sufficient.

The *Alter* court also sought to establish specific requirements which had to be met in this kind of case. We consider a quest for certainty in this kind of inquiry futile and regard a balancing or weighing evaluation to be more helpful because each case presents individual demands.

We unhesitatingly subscribe to the view expressed in *Alter* that if the government's position is to be denial, it should be given in absolute terms and by an authoritative officer of the Department, one who speaks with knowledge of the facts and circumstances. This is no place for ambivalent statements or loopholes.

In the instant case a knowledgeable United States Attorney in charge of the investigation has provided the court with assurance that there has not been any surveillance. This together with the witness' testimony is in this case adequate.

We have surveyed the decisions in the other Circuits, together with the decisions other than *Alter* in the Ninth Circuit, and have ascertained from the study that no outright conflict between the Circuits is shown. In general, our approach is in harmony with that em-

---

**4.** In a similar situation the Court of Appeals for the Third Circuit said:

However, based on the facts presented in a lengthy and complex record, I believe that the testimony of the two officers of the Immigration Service, who were active in the investigation and presentation of the evidence in the deportation proceedings, and the affidavit submitted by the Department of Justice constitute an effective compliance with § 3504. Under the circumstances presented by this record, I do not read § 3504 to require, as has been suggested by petitioner's attorney, the Government to produce every F.B.I. agent who has "participated in the surveillance of Mr. Bufalino and everyone else who conducted investigation of Bufalino . . .."

473 F.2d at 734.

ployed in the other cases. We append hereto a brief analysis of those decisions.

## II.

### HUSBAND–WIFE PRIVILEGE

Appellant also contends that the trial court erred in refusing to recognize that her claim of a "marital relationship" with one Ray Herman Otero constituted "just cause" under 28 U.S.C. § 1826(a) for her refusal to answer questions before the grand jury. As indicated, this particular matter was raised somewhat belatedly during the course of the proceedings in the trial court. Appellant was served on July 22, 1975 with a subpoena commanding her to appear before the grand jury on August 19, 1975. On August 18, 1975, at about 4:30 p.m. a flurry of motions was filed on behalf of appellant. None of these sought to raise a claim of privilege based on appellant's marital relationship with Otero. Hearing was held on August 19, 1975 at 8:00 a.m. on the motions which had been filed the previous day. These motions sought to quash the subpoena on a variety of grounds and, after argument, were severally denied.

Appellant then appeared before the grand jury that same morning, i. e., August 19, 1975, and after giving her name, refused to answer all additional questions propounded by the government attorney, asserting as grounds for such refusal her Fifth Amendment right not to incriminate herself. Appellant was then brought before the trial court on August 19, 1975 at 1:30 p.m., at which time the government made application under 18 U.S.C. §§ 6002, 6003 for an order to grant appellant immunity and compel testimony. After hearing, the trial court granted immunity as to three specific questions. Appellant reappeared immediately before the grand jury and refused to answer the three questions in connection with which she had been granted use immunity, and also refused to answer additional questions propounded by the government attorney. This time appellant asserted as grounds for her refusal a variety of grounds, and for the first time mentioned her alleged marital relationship with Otero as one ground for her refusal.

Appellant reappeared before the trial court on August 19, 1975 at 4:30 p.m., in connection with her then most recent refusal to answer. At this time the government attorney requested that appellant be held in contempt for refusal to answer the three questions for which use immunity had been granted and at the same time asked the trial court to broaden its order of immunity to cover additional questions. At this particular hearing the trial judge indicated that appellant was quite probably in contempt and, among other things, rejected what he called a "spurious claim of marital relationship." However, the trial court specifically declined to hold appellant in contempt at that time and granted appellant another opportunity to appear before the grand jury and answer the questions for which she had been granted immunity. The entire matter was then continued to August 22, 1975 for further proceedings. At the same time, the trial court broadened the immunity order to include additional questions.

At 10:00 a.m. on August 22, 1975, appellant again appeared before the grand jury and again refused to answer the questions propounded by the government attorney. Before the grand jury appellant again asserted as one ground for her refusal to answer the marital relationship with Otero. Appellant was immediately brought before the trial court at about 11:00 a.m. on August 22, 1975, in connection with the most recent refusal to answer. At this juncture counsel for appellant, among other things, sought to file an affidavit of "Veronica Vigil re her Marriage." The affidavit was apparently not given the trial judge at this particular moment, though it was later filed with the clerk of court during the afternoon of August 22, 1975. At the hearing held on the morning of August 22, 1975, the trial court adjudged appellant to be in civil contempt and ordered her to be confined

until she complied with the orders of the court.

As indicated, the affidavit of appellant above-referred to was filed with the court clerk on August 22, 1975 at 2:54 o'clock p.m., and reads in its entirety as follows:

"I, VERONICA VIGIL being duly sworn, depose and say that I am the wife of Ray Otero. Ray and I began to live together in Boulder, Colorado in October, 1973. In December, 1973, we became man and wife by mutual consent in Boulder, Colorado. We continued to live together until April, 1975.

I believe Ray Otero to be the target of the Grand Jury investigation."

■ The foregoing summary of proceedings in our view reveals the rather tardy manner in which the marital relationship issue was sought to be injected into the proceeding. The recitals in the affidavit, which apparently was not actually filed with the trial court until after appellant had been held in contempt, are so conclusory that the trial court was not required to reopen the matter and hold a full blown, adversary-type proceeding into the relationship between Vigil and Otero. The showing on this matter before the trial court was insufficient to necessitate an evidentiary hearing. We agree with the trial court that it was but another delaying tactic.

*In re Lewis*, 501 F.2d 418 (9th Cir. 1974) was concerned with a belated and conclusory claim of illegal electronic surveillance. In connection therewith the Ninth Circuit observed that "If we permit a late filing of a bare claim of illegal electronic surveillance to establish a new date from which orderly due process in a proceeding under Rule 42(b) is to be measured, we invite the very mini-trials and preliminary evidentiary hearings which impede the work of the Grand Jury." In the instant case the late filing of a bare claim of common-law marriage should not be permitted to impede the work of the Grand Jury.

■ We do not believe *In re Snoonian*, 502 F.2d 110 (1st Cir. 1974), relied on here by appellant, supports her position. There the husband-wife relationship was not in dispute and the court in that case reached the merits of the claim of privilege. Since the government in *Snoonian* declared that the wife of the witness before the grand jury was not a target of the grand jury inquiry, the husband's claim of privilege was overruled. In the course of its opinion the First Circuit observed that although one spouse may be privileged not to testify against the other, such privilege does not necessarily allow one spouse to decline to testify "merely because the testimony may incriminate the other."

Although we do not here reach the merits of appellant's claim of marital privilege, we note that in *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953) the Supreme Court observed that where the good faith of an alleged marital relationship is in doubt, "ostensible spouses are competent to testify against each other."

■ Under the circumstances, then, we conclude that the refusal of appellant to answer before the grand jury on the unsupported assertion that she had at one time in the past a "marital relation" with Otero does not constitute "just cause" for her refusal. Neither did the conclusory affidavit require the trial court to make full-scale inquiry into the matter.

## III.

### LACK OF DUE PROCESS

■ Appellant further contends that in the sequence of events leading up to the judgment of contempt she was denied procedural due process. In this regard appellant relies heavily on *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). In that case it was held that a contempt proceeding under 28 U.S.C. § 1826(a), though having certain aspects of a civil proceeding, is still "criminal enough to require the application of Rule

42(b)." Fed.R.Crim.P. 42(b) provides that a contempt brought under that section of the rule shall be on notice, i. e., either oral notice by the judge in open court, or an application by the United States Attorney, and that "reasonable time" shall be allowed "for preparation of the defense." In *Alter*, the Ninth Circuit stated that the five day rule prescribed by Fed.R.Crim.P. 45(d) (or Rule 6(d) of the Fed.R.Civ.P.) shall apply, in the absence of a compelling reason to shorten, or extend, the time.

In the instant case the trial judge in our view gave "notice" to appellant in the afternoon court session on August 19, 1975, of his intent to hold a contempt proceeding. However, the trial court did not at that time summarily adjudge appellant to be in contempt. Rather, the trial court continued the matter for three days to August 22, 1975. This continuance in our best judgment, afforded appellant and her three attorneys reasonable time to prepare to defend. This is particularly so, in view of the fact that most of the matters relied on as constituting just cause had been considered and ruled on by the trial court in its early morning court session on August 19, 1975. *United States v. Hawkins*, 501 F.2d 1029 (9th Cir. 1974). "Reasonable time" varies with each case, and the time allowed in the instant case was in our view reasonable under the circumstances. *See,* in this general regard, *In re Sadin*, 509 F.2d 1252 (2d Cir. 1975) where, although the initial contempt proceeding was summary and without notice, the Second Circuit held that a "hearing to reconsider" held two days later "cured" any procedural defects. *See also United States v. Handler*, 476 F.2d 709 (2d Cir. 1973) where it was observed that in the light of the command in 28 U.S.C. § 1826 regarding summary contempt proceedings, "certain concessions to ideal process necessarily must be made." The three day delay between the giving of notice on August 19, 1975, and the judgment of contempt entered at the hearing on August 22, 1975, afforded appellant reasonable time to defend.

## IV

## USE IMMUNITY

 Appellant further contends that the trial court erred in refusing to issue protective orders in connection with its grant of immunity. As above mentioned, appellant first refused to answer questions before the grand jury on the ground that such would violate her Fifth Amendment right not to be compelled to incriminate herself. The government then made application under 18 U.S.C. §§ 6002, 6003 for an order granting appellant immunity. The trial court granted the request and ordered so-called "use" immunity in connection with the answers made by appellant before the grand jury. Appellant claims that the immunity granted was not broad enough, and that the trial court should have issued additional protective orders. As illustrative of the type of order sought by appellant, she asserts that the trial court should have entered an order prohibiting any government attorney who hears, or reads, her compelled testimony from preparing any indictment naming her as a defendant which is based on the subject matter of her compelled testimony. We are of the view that the immunity granted is co-extensive with appellant's rights under the Fifth Amendment, and that the trial court did not err in refusing to issue the protective orders sought.

This particular phase of appellant's argument is controlled by *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). There the Supreme Court held that a grant of immunity as provided in 18 U.S.C. § 6002, precluding the use of compelled testimony, and evidence derived from such testimony, in a subsequent criminal proceeding against the witness is co-extensive with the scope of the self-incrimination privilege under the Fifth Amendment, and is sufficient to compel testimony over a claim of privilege. In that same case the Supreme Court also held the Fifth Amendment did not require that there be a grant of transactional privilege. The trial court did not err in refus-

ing to give the protective orders requested by Vigil. The grant of immunity was sufficient to neutralize the claim of privilege based on the Fifth Amendment.

## V.

## MISCELLANEOUS

■ Both in the trial court, and here, appellant has urged a potpourri of additional reasons why she should not be compelled to answer questions before the grand jury. These remaining ones do not merit much comment. In this connection, appellant claims that the subpoena served on her should be quashed because she was served with such one day after she refused to talk to FBI agents; that the composition of the grand jury did not reflect a true cross section of the community; that she had a right to be represented by counsel when appearing before the grand jury; and that the trial court should have instructed the grand jury, for example, that the grand jury is an "independent body with no ties to the prosecution," that a witness has an absolute right to assert her Fifth Amendment rights, and the like. We are not persuaded that any of these matters is possessed of any real substance, and we agree with the trial court that these particular matters were simply part of an overall delaying action. For example, no authority has been shown for the proposition that a witness before a grand jury has standing to challenge the composition of the grand jury. Suffice it to say, each of the matters raised under the heading has been considered by us and found to be without merit.

As concerns all of the various matters raised in this court, the following language from *In re Mintzer*, 511 F.2d 471 (1st Cir. 1974) is deemed appropriate:

We think that in a grand jury proceeding, the policies articulated in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), foreclose the broad inquiry argued by appellant. Logical development of the Supreme Court's concern for expeditious grand jury proceedings precludes mini-trials on each witness' rights; witnesses cannot be entitled to unlimited evidentiary exploration.

In *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Supreme Court held that a grand jury witness who had been granted immunity could not invoke the exclusionary rule. In this holding the Court made the following comment which is quite appropriate to the present controversy:

Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective. The probable result would be "protracted interruption of grand jury proceedings," *Gelbard v. United States*, 408 U.S. 41, 70 [92 S.Ct. 2357, [2372,] 33 L.Ed.2d 179] (1972) (White, J., concurring), effectively transforming them into preliminary trials on the merits. In some cases the delay might be fatal to the enforcement of the criminal law.

Judgment affirmed.

## APPENDIX

*Ninth Circuit.*

Other cases from the Ninth Circuit include: *United States v. Fitch*, 472 F.2d 548, *cert. denied sub nom., Meisel v. United States*, 412 U.S. 954, 93 S.Ct. 3003, 37 L.Ed.2d 1007 (1973) (less exacting than *Alter* on the question of the strength of the witnesses' allegations to require a government response). *See also United States v. Vielguth*, 502 F.2d

1257 (9th Cir. 1974), which distinguishes the case in which the appellant seeks to show surveillance of conversations in which *he* was not a participant. A prima facie showing was required here. *Cf. In re Harris,* 383 F.Supp. 1036 (N.D. Cal.1974), holding that the mere assertion of a *witness* that he was the object of illegal surveillance triggers a government affirmance or denial.

It can be said then that much less of a showing on the part of the witness is necessary where he seeks to establish surveillance of his conversations than where the seeks to establish surveillance of other persons' conversations.

` As to the sufficiency of the response, it has been held by the Ninth Circuit that a general claim is satisfied by a general denial. *United States v. See,* 505 F.2d 845 (9th Cir. 1974), *cert. denied sub nom., Gordon v. United States,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

*Fifth Circuit.*

A survey of some of the other Circuits shows that their decisions do not substantially differ from the view that we take here and from the rules in the Ninth Circuit. *Beverly v. United States,* 468 F.2d 732 (5th Cir. 1972). Here the court, although it disapproved the form and contents of the affidavits, reversed the district court's holding that they were insufficient to satisfy the minimum requirements. The affidavits described noises, inability to get a number and inability to get a dial tone. This was surveillance of an attorney. *Cf. United States v. Stevens,* 510 F.2d 1101, 1105 (5th Cir. 1975). The government's response is to be gauged by the specificity of the witness' claim.

A check of every interested agency was held to be a sufficient response. *In re Tierney,* 465 F.2d 806 (5th Cir. 1972), *cert. denied,* 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973). *Beverly* held that *Tierney, supra,* is not to be read as requiring live testimony.

*First Circuit.*

The First Circuit has held that an affidavit is sufficient response, adding that an extensive search, while good practice, was not required. *In re Mintzer,* 511 F.2d 471 (1st Cir. 1974), and *see* footnote 2 at 472. *Cf. In re Marx,* 451 F.2d 466 (1st Cir. 1971). Here the affidavit was filed very late in the proceedings. Because of the lateness the contempt was vacated (without prejudice). It was said that continued refusal would result in contempt.

*Third Circuit.*

Denial by affidavit has been upheld as sufficient in the Third Circuit. *See In re Grumbles,* 453 F.2d 119 (3d Cir. 1971) (statement not under oath given at the immunity hearing held sufficient, particularly when a later affidavit of denial was given at the appellate court's suggestion). *See also In re Horn,* 458 F.2d 468 (3d Cir. 1972) (inquiry directed to the appropriate agencies sufficient where no evidence of surveillance was discovered). *See also Bufalino v. Immigration and Naturalization Service,* 473 F.2d 728 (3d Cir. 1973), and *cf. United States v. D'Andrea,* 495 F.2d 1170 (3d Cir. 1974) (denial by means of a letter from the Acting Assistant Attorney General saying that a check of appropriate agencies revealed no illegal surveillance).

*Second Circuit.*

. A denial partially by affidavit and partially by unsworn testimony in *in camera* conference was held sufficient in the Second Circuit. *See In re Buscaglia,* 518 F.2d 77, 79 (2d Cir. 1975). There the Court of Appeals accepted two affidavits from the FBI and a special attorney using "to the best of his knowledge" language. The court said that these two affidavits fulfilled the government's burden.

A very recent Second Circuit case is *United States v. Grusse,* 515 F.2d 157 (2d Cir. 1975) (that where the government's denial by affidavit was insufficient, nevertheless the defect was cured by the Assistant United States Attorney's testi-

**222**

mony). *See* the concurring opinion of Judge Lumbard.

*Seventh Circuit.*

The Seventh Circuit once held that denials in the form of letters stating that the files have been checked and show no surveillances are adequate. *In re Womack,* 466 F.2d 555 (7th Cir. 1972), *but see Korman v. United States, supra* laying down a more demanding requirement.

In conclusion, it can be said that the differences which appear in the cases from the several Circuits are variations in emphasis rather than outright conflicts. Hard and fast rules are scarce. Cases speak of reasonable denials on the part of the government and of forthrightness. There is also a tendency to measure the specificity demanded of the government in relationship to the specificity of the witness' allegation. *In re Evans,* 146 U.S.App.D.C. 310, 452 F.2d 1239, 1242 (1971). Greater specificity is required in the claims where surveillance of persons other than the witness is involved. Here the Ninth Circuit's requirements are the most stringent.