In re GRAND JURY 11–84.

Everett E. WORTHINGTON, Witness-Appellant,

v.

UNITED STATES of America, Appellee.

No. 86–3088.

United States Court of Appeals, Ninth Circuit.

Submitted June 20, 1986.*

Decided Sept. 15, 1986.

Richard G. Hirsch, Nasatir & Hirsch, Santa Monica, Cal., for Worthington.

Francis J. Diskin, Asst. U.S. Atty., Seattle, Wash., for U.S.

Before KOELSCH, FERGUSON, and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

Federal grand jury witness Everett Worthington appeals the district court's order adjudging him in civil contempt as a recalcitrant witness for refusing to testify and produce documents before a grand jury. We reverse.

I.

In March 1984, Drug Enforcement Agency (DEA) special agents informed Thai narcotics authorities that they knew of some Americans who planned to export marijuana from Thailand to the United States. The agents provided Thai authorities with the identities of the Americans, and their Thailand addresses and telephone numbers. Thai authorities then placed wiretaps on the suspects' telephones and provided DEA agents with recordings of the interceptions. Some of the interceptions included Worthington's conversations.

In May 1984, the Federal Grand Jury for the Western District of Washington began investigating drug smuggling and money "laundering." On April 2, 1986, the grand jury subpoenaed Worthington to appear before it as a witness and to surrender to the grand jury:

The following records in your custody or control pertaining to Pan Asia Development, Ltd., Everett E. Worthington Inc.; Glandbay, Limited., and Euclide Holding Ltd; and Sashin Ltd., for the period January 1, 1980 to date:

1. Articles of incorporation and corporate minutes.

2. Ledgers, journals, contracts, agreements, receipts, closing statements, purchase and sales invoices, billings.

3. Bank records and loan files.

4. Diaries, calendars and directories.

5. Correspondence, reports, notes, memoranda and work papers.

6. Records of travel, entertainment and telephone billings.

Worthington filed a motion in federal district court to quash the subpoena. He argued that he had no duty to appear because, among other reasons, the grand jury's investigation was tainted by illegal electronic surveillance. The government admitted that the wiretaps in Thailand had intercepted some of Worthington's conversations. However, the government claimed that the surveillance was lawful.

At an evidentiary hearing on the motion to quash, the government produced a single witness, DEA Special Agent Boggs, to testify in support of its assertions that the wiretaps were legal. Over the defendant's objections, Boggs testified about separate conversations he had with DEA agents in Thailand and a Thai narcotics official, Colonel Bamroong. Based on these conversations, Boggs testified about the procedures used to obtain the wiretaps. The district court also permitted Boggs to testify that Bamroong stated that DEA officials did not direct him to initiate the wiretaps or to disclose the contents of the interceptions to the DEA agents.

The district court denied the motion to quash the subpoena. Based on Boggs's testimony, the court ruled that the "Thai wiretap was conducted solely by Thai authorities with no involvement or suggestion of U.S. agents." Worthington then appeared before the grand jury, but declined to produce the requested documents. The district court adjudged him in civil contempt and ordered him incarcerated until he provided testimony and documents or until the grand jury's term expired. Worthington timely appealed the district court's contempt order.

## II.

A federal grand jury witness may refuse to answer questions, or to respond to requests to produce testimonial evidence, derived from the illegal interception of his or her communications. *Gelbard v. United States*, 408 U.S. 41, 52, 92 S.Ct. 2357, 2363, 33 L.Ed.2d 179 (1972). Once the witness makes a preliminary showing that he or she was the victim of illegal electronic surveillance, *see United States v. Alter*, 482 F.2d 1016, 1026 (9th Cir.1973) (outlining criteria by which to judge a witness's claim), "the government must unequivocally affirm or deny the use of such surveillance." *In re Grand Jury Proceedings (Garrett)*, 773 F.2d 1071, 1072 (9th Cir. 1985). If the government admits the existence of electronic surveillance, it must demonstrate that the interception was lawful. 18 U.S.C. § 3504.[1]

The government admits here that the electronic surveillance occurred, that the surveillance intercepted Worthington's conversations, and apparently that the intercepted communications formed the basis for the grand jury investigation. The government argues, however, that the surveillance was legal because Thai, not DEA, officials conducted it. The issue in this appeal is whether Boggs's testimony satisfied the government's burden of demon-

---

1. Section 3504 provides:

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act; ...

(b) As used in this section "unlawful act" means any act [involving] the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto.

strating that the electronic surveillance was lawful.[2]

No court has formulated standards for determining when the government has sufficiently demonstrated the legality of electronic surveillance for the purposes of section 3504. Courts have examined, however, the adequacy of governmental responses to witnesses' allegations that electronic surveillance occurred. These cases consider three factors in determining whether the government has sufficiently denied the existence of electronic surveillance: the specificity and amount of information that forms the basis of the denial; the adequacy of the government's source for that information; and the manner in which that information is presented to the court. The analysis in these cases provides a useful starting point for resolving whether the government satisfied its burden here of establishing the legality of surveillance.

■ The specificity and amount of evidence the government must produce to satisfy its burden when denying the existence of electronic surveillance varies with the strength of the witness's allegations. "[T]he 'specificity of the prosecution's denial and the comprehensiveness of the search on which the denial is predicated must be measured against the specificity of the allegations of unlawful electronic surveillance and the strength of the support for those allegations.'" *United States v. Wylie*, 625 F.2d 1371, 1376 (9th Cir.1980) (quoting *United States v. Gardner*, 611 F.2d 770, 774 (9th Cir.1980)), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). Thus, the government is permitted to re-spond to a witness's general allegations about the existence of electronic surveillance with a general denial. *Gardner*, 611 F.2d at 774; *United States v. See*, 505 F.2d 845, 856 (9th Cir.1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).[3] Once the witness's allegations are specific enough for a prima facie showing, however, the government's affirmance or denial of the existence of electronic surveillance must be "factual, unambiguous and unequivocal." *Alter*, 482 F.2d at 1027.

Whether the source of the information for the government's denial is adequate also depends on the circumstances. A denial of the existence of electronic surveillance is usually based on inquiries to relevant government agencies and requests for searches of agency files. Courts have permitted authoritative government officers to deny that the government engaged in electronic surveillance based on third-party information. *See Gardner*, 611 F.2d at 774 (personal knowledge of affiant not required when complaining party only makes general allegations without substantiation); *United States v. D'Andrea*, 495 F.2d 1170, 1173–74 (3d Cir.) (denial based on third-party information sufficient when complaining party merely alleged illegality), *cert. denied*, 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974). However, the circumstances justifying the use of third-party information are present only when there is no reason to question the legitimacy of such information. *See Gardner*, 611 F.2d at 774 (implying that a witness's stronger show-

---

**2.** The district court did not rule on whether the federal statute governing wiretapping and electronic surveillance and eavesdropping, 18 U.S.C. § 2510, applied to wiretaps outside the United States, or whether the agents' actions violated Worthington's Fourth Amendment rights. *See United States v. Rose*, 570 F.2d 1358, 1362 (9th Cir.1978) (exclusionary rule applies to search and seizures in foreign country if performed on behalf of United States law enforcement); *United States v. Toscanino*, 500 F.2d 267, 280 (2d Cir.1974) (Fourth Amendment may apply to searches in foreign countries). Moreover, the government does not raise on appeal either of these issues to support the denial of Worthington's motion. Thus, we assume for the purposes of this appeal that 18 U.S.C. § 2510 ap-

plies to the Thai wiretaps. The only issue we decide is whether the government sufficiently disproved the DEA agents' involvement in the electronic surveillance.

**3.** The reasons for a less stringent standard for judging the government's response when the witness's allegations are general are twofold. First, "it is oftentimes difficult to prove a negative." *Wylie*, 625 F.2d at 1377. Second, courts recognize the need to avoid unnecessary and wasteful inquiries. *See In re Grand Jury (Vigil)*, 524 F.2d 209, 216 (10th Cir.1975), *cert. denied*, 425 U.S. 927, 96 S.Ct. 1526, 47 L.Ed.2d 170 (1976).

ing of the existence of electronic surveillance may require "first-hand inspection of the F.B.I. records by the Government's affiant").

Moreover, courts have always required that the government employee making the denial have sufficient information on which they can base a reasonable decision. *See, e.q., In re Grand Jury (Vigil)*, 524 F.2d 209, 216 (10th Cir.1975) ("[I]f the government's position is to be denial, it should be given in absolute terms and by an authoritative officer of the Department, one who speaks with knowledge of the facts and circumstances. This is no place for ambivalent statements or loopholes."), *cert. denied*, 425 U.S. 927, 96 S.Ct. 1526, 47 L.Ed.2d 170 (1976). As the court in *In re Quinn*, 525 F.2d 222, 225 (1st Cir.1975), stated:

> In general, we shall expect the Government's denial to be amplified to the point of showing that those responding were in a position, by firsthand knowledge or through inquiry, reasonably to ascertain whether or not relevant illegal activities took place; but we shall not ordinarily require evidentiary hearings nor shall we require unrealistically perfect affidavits....

Finally, the appropriate manner by which the government presents its evidence will depend largely on the substance of and support for the witness's allegations. Courts have held that, in some circumstances, the government's denial of the existence of electronic surveillance may be made by a sworn affidavit. *E.g., In re Grand Jury Proceedings (Hill)*, 786 F.2d 3, 7 (1st Cir.1986) (attorney conducting grand jury investigation provided sufficient affidavit that detailed sources of information that formed basis of grand jury questioning). And a hearing may be unnecessary if the witness offers nothing to indicate that such an affidavit was false or

defective. *In re Grand Jury Matter*, 683 F.2d 66, 68 (3d Cir.1982).

We apply these three requirements to the government's burden in demonstrating the legality of the surveillance. We believe that the government's showing was deficient in two respects: Boggs failed to provide adequate information about the initiation of the wiretaps, and Boggs is an improper source to testify about Bamroong's statements regarding the wiretaps' legality.[4]

■ Boggs's testimony did not provide sufficient information for the court to conclude that the wiretaps were lawful. He was unable to testify what date the DEA officials learned of the drug smuggling scheme or what date this information was passed to the Thai officials. He did not know how Agents Kelly and Slachter relayed the information to the Thai authorities, nor whether they believed that passing of information would cause the Thai official to initiate a wiretap. Boggs could not testify as to how often the agents and Colonel Bamroong met or talked. Boggs's lack of knowledge about the Thai investigation and DEA involvement makes his testimony entirely conclusory, and thus fails to fulfill the government's burden. *See Alter*, 482 F.2d at 1027 (affidavit containing conclusory statements insufficient because if "any of the conclusions ... were later proved wrong, it would be virtually impossible to establish that the affidavit was perjured"). The government must present a witness who can testify with adequate specificity about the circumstances and the DEA agents' role in the initiation of the wiretaps.

■ Moreover, Boggs is an inadequate source for some of the information his testimony did contain. He lacked personal knowledge of any of the most relevant

---

4. The form of the government's showing before the district court—presenting the witness at a hearing with the opportunity for cross-examination—satisfies its burden under the statute.

However, the government's witness was unable to testify fully about the circumstances of the wiretap.

elements of his testimony. Each fact the district court must have used to conclude that the "Thai wiretap was conducted solely by Thai authorities with no involvement or suggestion of U.S. agents" came from statements relayed to Boggs from Bamroong or Special Agents Kelly and Slachter. Boggs's only testimony relating to whether the DEA agents "suggested" the wiretaps was that Kelly and Slachter said the Thai officials placed the wiretap, and that Bamroong stated that the DEA agents neither directed him to conduct the surveillance nor requested him to disclose the contents of the intercepted communications.

■ Although, if sufficiently informed, Boggs may be a proper source for testifying about the DEA agents' role in the wiretaps, he is not a proper source for Bamroong's statements. These statements are central to the government's assertion of legality, and to permit Boggs to recount Bamroong's unsworn statements defeats the purposes of section 3504. For the government to rely on these statements to defeat a claim of illegality, it must produce some evidence to support their accuracy and authenticity. Thus, we conclude that, at a minimum, Bamroong must attest to these statements by sworn affidavit.

We do not impose a rigid rule that in every case the government must produce the individuals responsible for the wiretap to testify. Under some circumstances, a sworn affidavit by "an authoritative officer . . ., one who speaks with knowledge of the

facts and circumstances," *In re Grand Jury (Vigil)*, 524 F.2d at 216, may be sufficient to satisfy the burden. Such a requirement imposes no undue burden on the grand jury or the government, while it protects the witness's interests. In other circumstances, live testimony from such a person, with the opportunity for cross-examination, best protects the grand jury witness's rights. *See Gardner*, 611 F.2d at 774 n. 2 (greater weight given to testimony than to affidavits).[5]

In assessing whether the government adequately met its burden, we recognize that we must attempt to "create a sound balance among the competing demands of constitutional safeguards protecting the witness and the need for orderly grand jury processing." *Alter*, 482 F.2d at 1026. We note that in this case there is some evidence of government involvement in the wiretaps. Boggs testified that the DEA agents and the Thai officials work "hand in hand," that he knew that information provided to Thai officals in the past had resulted in electronic surveillance, and that Thai officials had provided intercepted communications from such wiretaps to DEA agents. When there is no support for a witness's claim of illegality, the government's burden may well be lower.

Under these circumstances, we conclude that the government's reliance on Boggs's testimony is insufficient to fulfill its burden of showing that the surveillance was lawful.

REVERSED AND REMANDED.[6]

5. Affidavits are routinely permitted for denials that electronic surveillance occurred. However, such affidavits must disclose the type of search conducted, the agencies contacted, and the files checked. With such detailed information, it makes little sense to require that the affiant personally conduct the search of the various law enforcement agencies' records when the witness has made only general allegations. In this case, however, the government has admitted the existence of the wiretap. We find the question of whether the wiretap was lawful to be distinct from the simple denial of the existence of the wiretap, and thus to require greater specificity and procedural safeguards. *See D'Andrea*, 495

F.2d at 1174 (question of whether alleged surveillance occurred is "not complex enough to require the safeguards of an adversary proceeding as a matter of law").

6. Because we find that the government failed to satisfy its burden under 18 U.S.C. § 3504, we decline to address Worthington's other arguments on appeal: whether the subpoenaed business records are privileged as personal records; and whether Worthington may decline to produce the records because the act of production would violate the Fifth Amendment.

KOELSCH, Circuit Judge, dissenting:

The court's opinion misses the initial and dispositive issue. We are not concerned in this matter with the question of whether or not there was electronic surveillance—that is admitted.

Instead the initial question, and the first hurdle to cross, is the question whether the United States is responsible for or chargeable with the admitted wiretaps. Only if the answer is "yes" does 18 U.S.C. § 3504 and the burden it imposes, come into operation. Because the answer is "no," I suggest, that the lengthy discussion of 18 U.S.C. § 3504 and the exposition of the many cases dealing with the burden and scope, at best, "puts the cart before the horse" and answers questions, which in my estimation, we should never reach at all.

In this matter the United States did not admit that it had anything to do with the wiretap. Had it done so, then, and only then, would it have been confronted with the burden of answering under section 3504 and required to negate the effect as required by the old doctrine of confession and avoidance.

Thus to start out as the majority does with the postulate that "[t]he issue in this appeal is whether Boggs's testimony satisfied the government's burden of demonstrating that the electronic surveillance was lawful" is to prematurely assume the major premise upon which the opinion rests and brush aside an insurmountable road block.

This record I submit, manifests the soundness of the district judge's factual determination. Upon appraising the witness Boggs's testimony following the hearing, he declared "[t]he uncontroverted testimony reveals that the Thai wiretap was conducted solely by the Thai authorities with no involvement or suggestion of U.S. agents." [1]

Why then should we be concerned with the quality of the Thai act.

The order should be affirmed.

---

1. An exposition of Boggs's testimony would serve no useful purpose. Suffice to say, in mi-lieu, Boggs's statements on matters material were persuasively corroborated.