# In re GRAND JURY PROCEEDINGS.

## Appeal of Allen W. SCHMIDT.
## No. 77–1460.

United States Court of Appeals,
Third Circuit.

Argued May 3, 1977.
Decided June 1, 1977.

---

James J. West, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ROSENN, Circuit Judge, and MEANOR,* District Judge.

## OPINION OF THE COURT

PER CURIAM.

Allen W. Schmidt appeals from a judgment of the district court holding him in contempt pursuant to 28 U.S.C. § 1826(a)[1] and ordering his confinement until the contempt is purged by his compliance with an order to testify before a grand jury.[2]

Schmidt previously had been indicted in three counts for conspiracy, manufacture and possession of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to trial on that charge, he made a motion to suppress, which was denied. At the following non-jury trial he was convicted on all three counts, and appeal from that conviction is pending here.[3]

Thereafter, on Friday, March 18, 1977, Schmidt was subpoenaed to appear before a grand jury on March 22, 1977. Schmidt appeared and refused to testify. He was then brought before the district court and, pursuant to the Government's application, was granted immunity under 18 U.S.C. §§ 6001–03. Following the grant of immunity, Schmidt's attorney requested a post-

Donald D. Rossetti, Rossetti & Zimmerman, Pittsburgh, Pa., for appellant.

* H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

1. Title 28 U.S.C. § 1826(a) provides:

   (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
   (1) the court proceeding, or
   (2) the term of the grand jury,
   including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

2. The order also provided that incarceration was not to extend beyond the term of the grand jury and in no event for more than 18 months.

3. No. 77–1053.

ponement of his grand jury appearance because

> [w]e have not had sufficient time to confer about what course of action he should follow should immunity be granted. We are requesting a postponement of his appearance to fully explore all of the various ramifications of what has happened here today.

Following this statement, the attorney for the Government argued that Schmidt's motion was premature because no contempt proceeding could ensue until Schmidt once again appeared before the grand jury and refused to testify. To this Schmidt's attorney replied: "That is precisely what we want to confer about as to a course of action." He thereafter requested a delay of a "few days." The court consented and ordered Schmidt to appear before the grand jury two days later on March 24, 1977.

On March 24, Schmidt again refused to testify. He was brought promptly before the district court where his attorney requested a continuance in order to prepare a defense to "these contempt proceedings." The court pointed out that Schmidt had had a day and a half to consider his course of action and invited testimony on the need for a continuance. Schmidt then testified that he refused to testify because his life had been threatened and "[o]n my Fourth Amendment right and my right to privacy. . . . " He refused to say who had threatened his life.

The district court found Schmidt had had sufficient time between March 22 and 24 to consult with counsel, decide upon a course of action, and prepare a defense to the inevitable contempt charge upon his continued refusal to testify. Impliedly rejecting the merits of the fourth amendment defense, the court then held Schmidt in contempt.

In this appeal, Schmidt attacks the validity of his citation for contempt on two grounds. Procedurally, he maintains that the failure of the district court to grant his request for a continuance after his refusal to testify on March 24 deprived him of a reasonable time to prepare a defense to the contempt charges. Going to the merits, Schmidt asserts that the fourth amendment prevents the district court from compelling him to answer questions before the grand jury, where the questions were based on evidence which Schmidt contends was illegally seized from him. It is clear from Schmidt's brief and his counsel's statements at oral argument that the fourth amendment contention is the only substantive defense now being asserted to the charge of contempt. It is Schmidt's position that the subject of the grand jury inquiry had its genesis in an illegal search of his farm, and that it is impermissible to question him before a grand jury upon a topic discovered through an illegal search and seizure. He is referring to the same search as to which his pretrial motion to suppress was denied on the indictment mentioned above. The propriety of that search is before this court on his pending appeal.

## I

It is settled that one cited for contempt under 28 U.S.C. § 1826, because of refusal to obey an order to testify before a grand jury, is entitled to a reasonable time to prepare his defense. *In re Grand Jury Investigation (Appeal of Bruno)*, 545 F.2d 385 (3d Cir. 1976). The determination of what constitutes a reasonable time is committed to the sound discretion of the district court and will, of course, vary with the circumstances. *Id.* at 388; *United States v. Alter*, 482 F.2d 1016, 1023 (9th Cir. 1973). If there is a need for resolution of factual disputes, or if the legal issues are complex, more time will be needed for preparation than might otherwise be the case. Here, no fact issue was raised and the one legal defense—that based on the fourth amendment—is neither complex nor meritorious. The district court determined that Schmidt had adequate time between March 22 and 24 to decide whether to testify and to prepare to defend the contempt citation that inexorably would follow a decision not to do so. We cannot say under the circumstances present that this determination amounted

to a mistaken exercise of discretion. *In re Sadin,* 509 F.2d 1252, 1255–56 (2d Cir. 1975). Appellant's reliance upon our recent decision in *Bruno, supra,* is misplaced. There, Bruno was given only 15 minutes between his refusal to testify and the start of his contempt hearing, which was the only time he had to prepare a defense. That is a far cry from the nearly 48 hours given to Schmidt, whose counsel was fully familiar with the facts, having represented Schmidt in the trial on the substantive offense.

## II

■ The record before us is clear in two respects: (1) Schmidt is not a target of the current grand jury investigation;[4] and (2) the fourth amendment defense to the contempt charge is the only one raised on this appeal. In support of his fourth amendment thesis, Schmidt presses *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) while the Government relies on *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

In *Calandra,* the defendant's place of business was subjected to an illegal search. Calandra was not indicted, but was subpoenaed before the grand jury and asked questions that had their basis in the illegal search and seizure. Calandra refused to testify on fifth amendment grounds. The Government sought an order granting him immunity. Calandra obtained an adjournment of his immunity hearing in order to move to suppress the search and to obtain return of the seized items. The motion was granted, the district court holding in addition that "Calandra need not answer any questions before the Grand Jury that are based on [the suppressed] evidence." *In re Calandra,* 332 F.Supp. 737, 746 (N.D.Ohio 1971), *aff'd,* 465 F.2d 1218 (6th Cir. 1972). The Supreme Court stated the issue as follows:

This case presents the question whether a witness summoned to appear and testify before a grand jury may refuse to answer questions on the ground that they are based on evidence obtained from an unlawful search and seizure.

414 U.S. at 339, 94 S.Ct. at 616.

The Court answered this question in the negative. In its analysis, the Court balanced the benefits to be derived from permitting grand jury witnesses to raise the exclusionary rule as a bar to their testimony against the disruption such utilization of the rule would cause to grand jury proceedings. It said:

It is evident that this extension of the exclusionary rule would seriously impede the grand jury. Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective.

414 U.S. at 349, 94 S.Ct. at 621.

The Court then held that the purpose of the exclusionary rule—deterrence of governmental misconduct—would not be significantly furthered by extension of the rule to the grand jury process. The reason for this, according to the Court, was that such an extension would deter only the improper gathering of evidence solely for use before the grand jury. Since prosecutors are unlikely to indict where no conviction can be obtained, extension of the rule to the grand jury would provide only a minimal protection of fourth amendment rights "at the expense of substantially im-

---

4. Schmidt disputes this, but the record contains an unequivocal statement by the Government that he is not a target. The thrust of the grand jury's efforts is directed to others who may have been involved in the crimes for which Schmidt has been convicted.

peding the role of the grand jury." 414 U.S. at 351–52, 94 S.Ct. at 622.

*Calandra* controls this case. Schmidt, at the present time, like Calandra, is a grand jury witness and nothing more. Because of the immunity granted to him, he may not refuse to testify on fifth amendment grounds. As a grand jury witness, he also may not refuse to testify in reliance on the exclusionary rule emanating from the fourth amendment.

Despite *Calandra,* Schmidt insists that *Silverthorne* governs. In that case, the Silverthornes, father and son, were indicted. Shortly after their arrest and while they were still in detention, an unlawful search was made of their lumber company. The items seized were turned over to the grand jury which had indicted them. A prompt motion was made for return of the seized items and this motion was granted, the district court ordering return of the originals and impoundment of the copies made therefrom. The originals were then subpoenaed and the company and one of the Silverthornes were held in contempt for disobedience of an order to comply with the subpoena. The Court reversed the judgment of contempt, holding that the subpoena was invalid because founded on knowledge gained through the illegal search.

In *Calandra,* 414 U.S. at 352–53 n. 8, 94 S.Ct. 613, *Silverthorne* was distinguished on the following grounds:

(1) In view of the indictment pending against the Silverthornes at the time the subpoena was issued, the Government motive behind the subpoena, as perceived by the *Calandra* court, was to gather evidence to be used in the pending prosecution against those already indicted. The effect of the *Silverthorne* decision was to exclude tainted evidence from introduction at the impending trial.

(2) In *Silverthorne,* the illegality of the search had been judicially determined prior to, and in a proceeding separate from, the grand jury investigation. Thus, resolution of the legality of the search in *Silverthorne*

did not constitute an impediment to the ongoing grand jury investigation.

The Court in *Calandra* acknowledged that the "broad dictum [in *Silverthorne*] might be construed to suggest a different result in the present case." *Id.* However, in the absence in *Calandra* of the distinguishing factual circumstances set forth above, the Court concluded that "*Silverthorne* is certainly not controlling." *Id.*

It cannot be gainsaid that here the same two distinguishing factors are also absent. Hence, it is inescapable that *Silverthorne* is no more controlling here than it was in *Calandra.*

Moreover, Schmidt has cited no post-*Calandra* case, and we have found none, that invokes *Silverthorne* in order to bar the testimony of a grand jury witness on fourth amendment grounds.

Since it is clear that under *Calandra* Schmidt had no right to refuse to testify before the grand jury even if the search he attacks were unlawful, the district court was correct in entering its judgment of contempt.

The judgment of the district court will be affirmed.