**In Re Carlos Rosario PANTOJAS,**
**Appellant.**

No. 80–1732.

United States Court of Appeals,
First Circuit.

Argued Dec. 2, 1980.
Decided Dec. 24, 1980.

See also, 1 Cir., 628 F.2d 701.

Jeffrey E. Fogel, Newark, N. J., with whom Juan Ramon Acevedo Cruz, Judith Berkan, and Pedro J. Varela, Hato Rey, P. R., were on brief, for appellant.

Justo Arenas, Asst. U. S. Atty., San Juan, P. R., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., and Gary V. Scales, Spec. Atty., U. S. Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

PER CURIAM.

We are once again asked by the appellant, Carlos Rosario Pantojas, to review an order of the district court finding him in civil contempt under 28 U.S.C. § 1826. This latest contempt finding stems from his second refusal to submit to a lineup as requested by a grand jury impanelled subsequently to that which initially made this request and which we considered in *In re Carlos Rosario Pantojas*, 628 F.2d 701 (1st Cir. 1980). Upon appellant's request we granted expedited hearing to consider this appeal.

Appellant's brief on appeal raises several arguments each of which in part attempts to sustain the general claim that the grand jury process was abused. In spite of these multiple issues, oral argument centered on the sole claim that the government had failed to prove that it was a directive of the grand jury which he had disobeyed. The thrust of this argument is that because it was the prosecutor who had issued the subpoena for the appellant to appear before the grand jury, who had controlled the line of questioning that followed in the grand jury room, and who had raised the issue of appearing in a lineup, this request was always his and never became that of the grand jury. To sustain this argument appellant draws heavily on the testimony given by the deputy foreman at the contempt hearing. During the cross-examination appellant's counsel elicited the following from this witness:

Q. Ms. Fuentes, who requested Mr. Rosario to appear before a line-up?

A. The foreman of the grand jury.

Q. So I take it you are not the foreman?

A. Excuse me?

Q. I take it you are not the foreman?

A. No, I am the foreman deputy.

Q. What did the foreman request?

A. He ordered him to appear in a line-up and he refused it.

Q. What were his exact words?

A. So ordered.

Before us appellant claims the foreman's action was insufficient to demonstrate the intent of the grand jury as a whole or to convey authority on the prosecutor to compel this compliance.

■ We find this argument strained and unpersuasive. To begin with appellant concedes, as he must, that the prosecutor has the power to subpoena witnesses and examine them before the grand jury. However, relying strongly on *In re Melvin*, 546 F.2d 1 (1st Cir. 1976) (*Melvin I*) he contends that the intrusion upon his privacy which a lineup order entails requires a more formal procedure than was followed in this case. But the parallel to *Melvin I* is not well taken. Therein we recognized that an order requiring a grand jury witness to appear in a lineup outside the grand jury room involved "a major intrusion upon personal liberty, which, if justified, is justified only upon the basis of the grand jury's unique investigative powers." *Id.* at 5. We went on to set aside this type of order because it had been issued totally independent of the grand jury's knowledge. *Cf. United States v. O'Kane*, 439 F.Supp. 211 (S.D.Fla.1977) (a witness although subpoenaed to appear before grand jury was asked outside its presence by prosecutor to submit to a lineup). However, subsequently in *In re Melvin*, 550 F.2d 674 (1st Cir. 1977) (*Melvin II*), we upheld this type of request when issued in proper participation with the grand jury.

■ Neither case could stand for the proposition that it was improper for the prosecutor to suggest the desirability of having a witness submit to a lineup. To the contrary both, at least implicitly, accepted

this faculty as clearly within the prosecutor's "substantial" powers with respect to grand jury investigations. *Melvin I* at 5; *see also United States v. Dionisio*, 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973); *Branzburg v. Hayes*, 408 U.S. 665, 701, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972); *cf. In re Grand Jury Proceedings*, 558 F.2d 1177, 1179 (5th Cir. 1977) ("The mere fact that the prosecution in this case may have suggested that the defendant be called for the purpose of giving a voice exemplar in no way impugns the integrity of the grand jury's investigation", *quoting United States v. Shaw*, 555 F.2d 1295 (5th Cir. 1977)).

▮ Nor does either case support the need for the exceedingly formal proceedings appellant envisages, *viz.*, that the grand jury reach the decision to request a lineup by vote outside the presence of the prosecutor. Such a procedure is simply not compelled by any statute or rule governing the function of the grand jury. *Cf.* Rule 6(f), Fed.R.Crim.P. (requiring the concurrence of 12 or more jurors only to find and return an indictment). Indeed, to require this rigidity and formality would in effect "saddle a grand jury with minitrials and preliminary showings", *United States v. Dionisio, supra*, 410 U.S. at 17, 93 S.Ct. at 773, of a type which "would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." *Costello v. United States*, 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). *See also United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); *Appeal of Maguire*, 571 F.2d 675, 677 (1st Cir. 1978). We emphasize that district courts should be ever alert to safeguard legitimate concerns. But here, after having reviewed the transcript of the contempt hearing in its totality, and after finding no

special formality was required for the grand jury to accept the prosecutor's[1] suggestion, we are satisfied that the directive, which the appellant concedes he disobeyed, was one properly emanating from the grand jury.

▮ Appellant also attempts to sustain the claim that the government is abusing the grand jury process by arguing that after two prior refusals to submit to this same request the government should by now know that his "conscientious principles"[2] do not permit him to comply and that, therefore, these repeated requests result, not in achieving the coercion of a recalcitrant witness to comply with a grand jury's request, but in inflicting a punishment which it could not otherwise impose. We are unpersuaded by this reasoning. First, the appellant concedes that grand juries have the power to subpoena witnesses on more than one occasion and also that a successor grand jury has the power to subpoena a witness who was called by a previous grand jury. *Shillitani v. United States*, 384 U.S. 364, 371 n. 8, 86 S.Ct. 1531, 1536 n. 8, 16 L.Ed.2d 622 (1966). Just as a grand jury's right to call any witness is not defeated by the knowledge of the probability that a witness will refuse to comply with a legitimate request, *see In re Farrell*, 611 F.2d 923 (1st Cir. 1979); *In re Poutre*, 602 F.2d 1004 (1st Cir. 1979), so, too, a second grand jury's right to call a witness called by a predecessor grand jury is not defeated by the same kind of anticipation. Second, the fact that we deal with a new grand jury, understandably unfamiliar with any prior evidence, detracts from rather than supports appellant's argument. The successor grand jury is under no less right and duty to perform a "thorough and extensive investigation" and to insure that it returns only "well-founded" indictments. *Branzburg v. Hayes, supra*, 406

---

1. We cannot help but comment that the government could have eliminated all doubt on this point had it simply followed what was apparently its normal procedure of securing written authorization of the grand jury for this request. Such was the process followed with the previous grand jury. It is undoubtedly the better practice.

2. We are not told the nature of these "conscientious principles" which do not allow appellant to submit to the line-up. We note that he had earlier consented to fingerprinting and providing handwriting and hair exemplars.

U.S. at 688, 701, 92 S.Ct. at 2660, 2666. If the original grand jury which initially called appellant to appear in a lineup had the power to do so; there is no reason why a successor grand jury does not possess this same right. And as was true of the earlier appeal, appellant has again failed to sustain his burden of showing why the requested lineup can be of no possible use to the grand jury. Lastly, in civil contempt, the line between imprisonment as coercion (to induce compliance) and punishment is too thin a distinction for appellant to use as a crutch on which to lean an argument of abuse. "[A]ny imprisonment, of course, has punitive and deterrent effects"; but so long as a witness is unjustified in refusing to comply with a grand jury request it may be used until compliance is secured. *Shillitani v. United States, supra,* 384 U.S. at 370, 86 S.Ct. at 1535. We note that the incarceration that the appellant has suffered to date is well under the limit for which he may be statutorily held. 28 U.S.C. § 1826(a).

The appellant's next contention is that the district court, in a case presenting a situation of a recurring subpoena and refusal, should have exercised its supervisory powers over the grand jury and required a more definite showing of the specific need for the lineup order. For the reasons just listed there was no inherent abuse in the successor grand jury's resubmitting the appellant to the same request. Nor are we convinced by the appellant's corollary argument by which he contends that he was denied due process because the district court denied his request for a continuance of his contempt hearing. The argument advanced is that he was not provided sufficient time to prepare his defense. Ordinarily this type of argument would give us reason to pause. But we simply cannot ignore the fact that this was not the first, or even the second time, that the appellant had been ordered to comply with this request and was before the district court on a refusal to do so. Entrenched as he was in this continued refusal to comply, his need for preparation time was accord-

ingly minimal. *See Rastrom v. Robbins,* 440 F.2d 1251 (1st Cir. 1971) (discussion of specific factors, absent here, which needed more preparation time than four hours). Moreover, before us appellant does not indicate what defense he would, or could have, presented had he been allowed the extension requested. We note that to the district court he indicated he would base his justification for not complying on essentially those points we rejected in his first appeal.[3] As a matter within the district court's discretion, and because we are satisfied that appellant was given a meaningful opportunity to be heard, we see no ground for error in the denial of a continuance. *In re Farrell, supra; In re Bianchi,* 542 F.2d 98, 101 (1st Cir. 1976).

*Affirmed.*

---

**3.** In the two contempt proceedings appellant has also been represented by the same counsel.