## In re GRAND JURY MATTER.

### In re Linda BACKIEL, Witness, Appellant.

### No. 90–1215.

United States Court of Appeals, Third Circuit.

Argued April 5, 1990.

Decided June 11, 1990.

Ronald Levine (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Patricia McInerney, Patricia V. Pierce (argued), Philadelphia, Pa., for appellant.

Morton Stavis, New York City, David M. McGlaughlin, Newman & McGlaughlin, P.C., Peter Goldberger, Law Offices of Alan Ellis, P.C., Philadelphia, Pa., amici curiae in support of appellant.

Before MANSMANN and SCIRICA, Circuit Judges, and SMITH, District Judge.*

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

Attorney Linda Backiel appeals from an order of the United States District Court for the Eastern District of Pennsylvania holding her in civil contempt for failure to answer certain questions before a grand jury despite having been ordered to do so. We will vacate the adjudication of contempt. While Backiel raises a variety of claims which we reject as meritless, we

---

* Honorable D. Brooks Smith of the United States District Court for the Western District of Pennsylvania, sitting by designation.

agree that the district court erred in denying Backiel's request to open that part of her civil contempt hearing which did not impinge upon the secrecy of proceedings before the grand jury.

## I.

On September 11, 1989, Backiel was served in Puerto Rico with a subpoena duces tecum ordering her to testify and produce documents before a grand jury sitting in Philadelphia, Pennsylvania. The government sought limited information regarding the authenticity and disposition of certain documents relevant to an on-going bail-jumping investigation. Backiel informed the government that if she were called before the grand jury, she would raise fifth amendment and electronic surveillance objections. She declined to make an off-the-record proffer of her knowledge of material facts.

On December 14, 1989, the government requested issuance of an immunity order compelling Backiel's testimony. On December 22, the government filed an affidavit pursuant to our decisions in *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85 (1973) (*"Schofield I"*) and *In re Grand Jury Proceedings (Schofield)*, 507 F.2d 963 (3d Cir.1974), *cert. denied sub nom. Schofield v. United States*, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975) (*"Schofield II"*). The affidavit stated that the Assistant United States Attorney, his predecessor and the FBI case agent had no knowledge of electronic surveillance of Backiel in connection with the matter under investigation by the grand jury. On January 3, 1990, Backiel was informed that she was not a target of the grand jury investigation.

On January 16, 1990, Backiel filed a motion to quash the grand jury subpoena on the following grounds:

(1) the documents sought were not in her possession or control;

(2) the information sought was protected from disclosure by

 (a) the attorney-client privilege,

 (b) the Sixth Amendment right to counsel,

 (c) the work product doctrine,

 (d) the fifth amendment, and

 (e) the ethical obligations of attorneys to maintain the confidences of their clients;

(3) there had been an abuse of the grand jury process in that the subpoena

 (a) sought irrelevant information,

 (b) punished the witness for advocacy on behalf of politically controversial clients,

 (c) deprived Backiel's clients of effective assistance of counsel by undermining their confidence that she will not reveal their confidences,

 (d) impinged upon the exercise of first amendment rights,

 (e) sought rebuttal evidence in anticipation of possible trial defenses,

 (f) sought information to be used in a pending political conspiracy case in another jurisdiction,

 (g) related to a crime allegedly committed four years before which should have formed the basis of an indictment long ago, and

 (h) was the product of illegal surveillance.

The motion also challenged the adequacy of the *Schofield* affidavit, claimed an impermissible change in the scope of the subpoena, and denied the validity of the service effected in Puerto Rico. More than forty affidavits from clients and members of the legal community were appended to the motion. These affidavits attested to Backiel's reputation and character and stated that she should not be required to violate the attorney-client privilege by testifying before the grand jury. Some affiants made reference to the concern that giving testimony would chill Backiel's relationship with her clients and virtually all expressed the opinion that no purpose would be served by incarcerating Backiel. With the motion to quash, Backiel filed a motion for disclosure of electronic surveillance. The government answered these motions, amicus briefs were filed and a hearing was held on January 31, 1990. Backiel proffered no witnesses. On March 6, 1990, the

district court denied all of Backiel's motions, granted her immunity, and directed that she appear and give testimony before the grand jury.

It was agreed that Backiel would appear at the session of the grand jury scheduled for March 20, 1990. Prior to March 20, Backiel filed a renewed motion for disclosure of electronic surveillance which the government met with a supplemental affidavit of denial pursuant to 18 U.S.C. § 3504. The renewed motion was denied.

On March 20, prior to appearing before the grand jury, Backiel filed a second motion to quash, alleging grand jury abuse growing out of a scheduling conflict. Without awaiting a ruling on this motion, however, Backiel appeared before the grand jury. She read and distributed to the jurors a prepared statement reiterating her objections to giving testimony and ultimately refused to answer the questions asked. At the conclusion of Backiel's appearance, at approximately 3:50 p.m., the parties came before the district court where the government moved for a rule to show cause why Backiel should not be held in contempt. The district court denied Backiel's request for additional time to prepare, and a hearing on the motion began at 4:15 p.m. At that time, the district court ordered Backiel to show cause why she should not be held in civil contempt for refusing to testify.

Over Backiel's objection, the hearing was closed to the public. During the course of the hearing, Backiel sought time to secure two types of witness testimony. First, she sought to bring before the court purported experts on the grand jury system to "give testimony as to why people shouldn't give testimony before the Grand Jury." Second, Backiel asked that she be allowed to call a second category of witnesses who were members of the bar and would testify concerning her reputation and work record. The court declined to hear live testimony from the witnesses on the ground that even if the testimony were accepted as true, it was irrelevant to the issues before the grand jury and before the district court in the contempt proceeding.

Claims of grand jury abuse were also raised in the contempt hearing. Backiel argued that, during the course of her appearance before the grand jury, the prosecution had manipulated and misinformed the grand jurors in answering their questions on a number of points relating to the necessity for Backiel's testimony. Counsel for Backiel asked that the district court require the grand jury stenographer to read portions of the grand jury transcript containing the colloquy between the prosecutors and the grand jurors. The court questioned the Assistant U.S. Attorney and, while it heard a limited portion of the transcribed colloquy, it declined to hear or consider other portions.

Finally, the court put to Backiel the same questions asked in the grand jury proceedings. After Backiel twice maintained that she would adhere to her refusal to answer these questions before the grand jury, she was held in contempt. Incarceration was stayed pending this expedited appeal.

## II. Jurisdiction

■ Before we move to the merits of Backiel's appeal, we must resolve a jurisdictional issue of first impression in this circuit: where a recalcitrant witness is not confined pursuant to an order of contempt, does the passing of the 30–day period for decision set forth in 28 U.S.C. § 1826(b) deprive this court of jurisdiction? Having reviewed the decisions and reasoning of other federal appellate courts considering this question, we are satisfied that we retain jurisdiction to consider this matter despite the fact that more than thirty days have elapsed since the filing of the notice of appeal. We hold with other circuits that the thirty day rule has no application where the contemnor is not confined pursuant to the contempt order. *See In re Sealed Case*, 829 F.2d 189, 190 (D.C.Cir.1987) *rev'd on other grounds*, 838 F.2d 476 (D.C.Cir.), *prob. juris. noted*, 484 U.S. 1058, 108 S.Ct. 1010, 98 L.Ed.2d 976 (1988); *In re Grand Jury Proceedings re: Larson*, 785 F.2d 629, 631 n. 4 (8th Cir.1986), *cert. denied sub nom. Roe v. U.S.*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987); *U.S. v.*

*Johnson*, 736 F.2d 358 (6th Cir.1984); *In re Witness Before Special October Grand Jury*, 722 F.2d 349, 353 (7th Cir.1983), *cert. denied sub nom. Roe v. U.S.*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987); *In re Rosahn*, 671 F.2d 690, 694 (2d Cir.1982); *In re Grand Jury Proceedings (Gravel)*, 605 F.2d 750 (5th Cir.1979); and *Brown v. U.S.*, 465 F.2d 371, 372 (9th Cir.1972).[1]

The 30–day time frame specified in § 1826(b) was designed to protect the incarcerated recalcitrant witness from protracted confinement without appellate review of the order holding him in contempt. Where the contemnor is not incarcerated, the concerns underlying the fixing of an inflexible time schedule are not implicated. We adopt, therefore, as our position, the language of the court in *In re Sealed Case:*

> While cases of this genre merit and must receive expedited treatment, *see* [28 U.S.C.] § 1657(a), fair and complete consideration is sometimes impossible 'not later than thirty days from the filing of [the notice of] appeal.' *Id.* § 1826(b). Instead of rushing headlong to meet a rigid deadline, this court has strived and will continue to strive to decide 'recalcitrant witness' appeals 'as soon as practicable.'

829 F.2d at 190 (footnote omitted). Having resolved this threshold jurisdictional issue, we turn to the merits of the appeal.

### III. Due Process

#### A.

Backiel's initial claims of error are grounded in procedural due process. She argues first that she was denied due process in that she was given inadequate notice of and time to prepare for the contempt hearing. It is undisputed that a recalcitrant witness is entitled to notice and a reasonable opportunity to prepare a defense prior to being held in contempt. *Remington Rand Corp.—Delaware v. Business Systems, Inc.*, 830 F.2d 1256 (3d Cir.1987). It is, however, also clear that "the determination of what constitutes a reasonable time is committed to the sound discretion of he district court and will ... vary with the circumstances." *In re Grand Jury Proceedings (Schmidt)*, 550 F.2d 1240, 1242 (3d Cir.1977). A district court's ruling, then, will be reversed only for abuse of discretion.

Backiel's first due process claim stems not from the content of the notice of the contempt hearing, but from the amount of time allotted for preparation. She contends that fifteen minutes' preparation time was inadequate and unreasonable. Having thoroughly examined the record in this case, we do not agree.

In our view, the most important factor in determining the adequacy of time allotted to a witness to prepare for a contempt proceeding is whether the witness has been given a fair opportunity to present all available defenses. This view is amply supported in the case law. In *In re Grand Jury Proceedings (Schmidt)*, we adopted a flexible approach to determining what constitutes an adequate time to prepare; what is reasonable depends upon the circumstances of the particular case. "If there is a need for resolution of factual disputes or if the legal issues are complex, more time might be needed for preparation than might otherwise be the case." 550 F.2d at 1242. Where all of the important issues have been raised prior to the contempt hearing, the witness may be deemed to have had "adequate time to prepare even though very little time elapses between the alleged contempt and the contempt hearing." *U.S. v. Alter*, 482 F.2d 1016, 1023–24 (9th Cir.1973). *See also In re Grand Jury Proceedings v. Hutchinson*, 633 F.2d 754, 756 (9th Cir.1980) (even though time interval between the act of contempt and the contempt hearing is short, a reasonable opportunity to prepare a defense is accorded where contemnor has had opportunity to present defenses prior to the contempt

---

1. We note that a contrary result was reached in *Matter of Berry*, 521 F.2d 179, 181 (10th Cir.), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975). The court there held that the statute's thirty day provision is mandatory and may not be extended by any waiver, stay, or release on personal recognizance. The facts of that case demonstrate the difficulty inherent in deciding these often complex matters within an inflexible time frame.

hearing); *American Fletcher Mortgage Co. v. Bass*, 688 F.2d 513 (7th Cir.1982) (where all of the evidence in support of defense to the contempt charge had been presented to the court, there was no need for longer preparation time.)

Our decision in *In re Grand Jury Investigation (Bruno)*, 545 F.2d 385 (3d Cir. 1976), is in accord. There, while we found that fifteen minutes was not enough time for the witness to prepare for a contempt proceeding, we noted that the witness had had no prior opportunity to raise any "just cause" defense.

■ This is not the case with Linda Backiel. Backiel raised a plethora of just cause defenses in her motion to quash. These were fully briefed and argued. Furthermore, as an attorney, and a self-described authority on the grand jury process, Backiel was fully aware (and had been aware for weeks) that contempt proceedings would follow her refusal to answer questions before the grand jury. Her statement before the grand jury makes clear her expectation that this would happen. By the time of the contempt hearing, there was virtually no issue which had not been addressed and vigorously litigated. Those issues which did remain did not, in our view, mandate additional time for preparation.

In evaluating Backiel's claim that she was not given adequate time to prepare for the contempt hearing

> [W]e simply cannot ignore the fact that this was not the first ... time that the appellant had been ordered to comply with [the request to testify] and was before the district court on a refusal to do so. Entrenched as [s]he was in this continued refusal to comply [her] need

for preparation time was accordingly minimal.

*In re Pantojas*, 639 F.2d 822, 825 (1st Cir.1980).

At the contempt hearing, Backiel claimed the need for additional time to secure the testimony of live witnesses. Two witnesses were to be called as "experts" on the grand jury process. Backiel's written proffer with respect to these witnesses established that one of these witnesses would testify to Backiel's position "with regard to the Constitutional purposes and functions of the grand jury and her commitment to end abuses of its powers." The other expert "would offer testimony concerning the history of the political abuse of the grand jury in Puerto Rico and the perception of those who believe in independence that an attorney who would testify before a grand jury investigating any political activist would betray their trust before a grand jury as well, and would thus be disqualified from serving as a lawyer for those who believe in independence." These issues of grand jury abuse were explored fully in the context of the motion to quash and in the hearing on that motion.[2]

■ The court asked Backiel whether these witnesses were "factual." When counsel responded that the witnesses were factual in the sense that they would testify "to the fact that Ms. Backiel has just cause to refuse to testify," the court declined to hear them and appended the proffer to the record. The court also denied Backiel's request for additional time to "call also live the witnesses who provided affidavits to this Court who are notable members of the Bar of the State of Pennsylvania, who will also testify as to just cause with respect to Ms. Backiel."[3] The judge concluded that

---

2. More than forty affidavits and letters from various groups, individuals, and members of the legal community were appended to the motion to quash. Many of these addressed the grand jury abuse issues outlined in the proffers. Counsel for Backiel did not seek to introduce live testimony in support of the motion to quash.

3. On appeal, Backiel argues that she sought to present live testimony on the issue of remedy and that it was error for the district judge to

refuse to hear this testimony. There is case authority to the effect that questions directed to remedy should be accorded the same status as material facts and that testimony on this issue would be permitted. *Matter of Grand Jury Empanelled May, 1988*, 894 F.2d 881, 884 (7th Cir. 1989). Our careful reading of the record, however, reveals that Backiel did not raise the issue of remedy in the contempt hearing; at no point did counsel for Backiel explain to the court that the proposed witnesses would address remedy. Because counsel did not address the issue of

these witnesses, from whom he had already received affidavits, knew little of the facts of Backiel's case.

The only other "new issue" raised during the contempt hearing centered on allegations of prosecutorial misconduct before the grand jury earlier in the day. The court stenographer who had transcribed these proceedings was present in the courtroom during the contempt hearing and was able to read aloud any material part of the record. While the district court declined to hear everything that Backiel's counsel believed relevant, granting Backiel additional time to prepare would have served no purpose. All that could have substantiated her claims of abuse was readily available to her and to the court at the contempt hearing.

■ Focusing solely on the due process claim arising from the limited time given Backiel to prepare for the contempt hearing, we find no error. The record supports the conclusion that additional time was sought only to secure the live testimony of witnesses, the substance of whose testimony was already before the court in the form of affidavits supporting the motion to quash. In these circumstances, we believe that the short time allotted to Backiel to prepare for the contempt proceeding in no way prejudiced her ability fairly to present all defenses available to her.

This finding that the district court did not abuse its discretion in allowing only minimal time for preparation is buttressed by our conclusion that, on the facts of this case, Backiel had no right to present live testimony at the contempt hearing.

In the context of civil contempt, less than full adversary hearings have been found to satisfy the requirements of due process in certain circumstances. The Court of Appeals for the Seventh Circuit has held that a federal civil contempt proceeding is governed by the rules of civil procedure.

"Those rules entitle a party to an evidentiary hearing only if there are genuine issues of material fact. Fed.R.Civ.P. 56." *Matter of Grand Jury Proceedings Empaneled May, 1988,* 894 F.2d 881, 882–83 (7th Cir.1989). A similar result was reached by the Court of Appeals for the First Circuit when the court concluded that a full evidentiary hearing was not required where the alleged contemnor's position was set out in affidavits and letters already before the court. The likely repetitiveness of proposed live testimony and overall delay in the grand jury proceedings were sufficient to outweigh unsubstantiated due process concerns. *In re Grand Jury Proceedings (Campaigner Publication, Inc.),* 795 F.2d 226, 235 (1st Cir.1986), *cert. denied sub nom. Caucus Distributors v. United States,* 479 U.S. 1064, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987). *See also In re Rosahn,* 671 F.2d 690, 695 (2d Cir.1982) (the right to call witnesses does not apply where facts surrounding the contempt are undisputed and would not be further elucidated by the evidence). Our sister court's decision in *Matter of Kitchen,* 706 F.2d 1266 (2d Cir.1983), *cert. denied sub nom. Roe v. United States,* 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987), is also instructive. In *Kitchen,* the court, while noting that the witness in a contempt proceeding should have the right to call witnesses whose testimony might be relevant to his defense, concluded that the judge may require an offer of proof establishing the relevance of the proposed testimony. "Given the exigencies of any grand jury proceeding, the district judge would have very broad discretion." *Id.* at 1273.

■ We believe that an approach which limits an alleged contemnor's right to call witnesses to those instances where there is a genuine factual dispute or where testimony is useful to bring to the court's attention relevant evidence not already developed in the record is the correct one.

---

remedy before the district court and because, in any event, most of the affidavits appended to the record attested to the futility of incarceration as a means of securing her testimony, we find no ground for a due process claim here.

We note, also, that even where Backiel has presented evidence concerning the futility of

incarceration, the district judge is not required to give this evidence conclusive effect. *See In re Grand Jury Investigation (Braun),* 600 F.2d 420, 425 (3rd Cir.1979).

"While a witness must be given a meaningful opportunity to present his defense at a hearing under 28 U.S.C. § 1286 ... this summary procedure does not require meaningless formalities that would only serve to delay the proceedings." *In re Bianchi*, 542 F.2d 98 (1st Cir.1976).

Given the detailed arguments and evidence presented to the court by Backiel in support of her motion to quash and the fact that the substance of the proposed live testimony had already been brought to the court's attention through more than forty affidavits, we do not believe that the judge's decision denying Backiel the opportunity to present live witnesses amounted to an abuse of discretion or a denial of due process.

## B.

A more serious issue of procedural due process is, however, raised by the district court's decision, over Backiel's objection, to close the entire contempt proceeding to the public. The court determined that a closed hearing was required in order to prevent disclosure of matters occurring before the grand jury.

█ The policy of secrecy in connection with grand jury proceedings is well established in the federal judicial system. *In re Grand Jury Investigation No. 76–398*, 424 F.Supp. 802 (E.D.Pa.1976). Reasons underlying this policy include: (1) preventing the escape of those who may be indicted, (2) ensuring the grand jury freedom in its deliberations, (3) preventing subornation of perjury or witness tampering, (4) encouraging disclosure by those having information relating to the commission of crimes, and (5) protecting innocent persons from disclosure of the fact that he has been under investigation. *See United States v. John Doe, Inc. I*, 481 U.S. 102, 109 n. 5, 107 S.Ct. 1656, 1661 n. 5, 95 L.Ed.2d 94 (1987).

This policy of secrecy is embodied in Fed.R.Crim.P. 6(e)(5) which provides:

*Subject to any right to an open hearing in contempt proceedings, the court shall order a hearing on matters affecting a grand jury proceeding to be closed to the* extent necessary to prevent disclosure of matters occurring before a grand jury. (Emphasis added.)

The Advisory Committee notes explain that the language we highlighted was included to "accommodate any First Amendment right which might be deemed applicable in that context because of the proceedings' similarity to a criminal trial ... and also any Fifth or Sixth Amendment right of the contemnor. The latter right clearly exists as to a criminal contempt proceeding ... and some authority is to be found recognizing such a right in civil contempt proceedings as well...."

The Court of Appeals for the Second Circuit has held explicitly that witnesses facing possible imprisonment in civil contempt proceedings relating to grand jury matters have the right to have at least part of the contempt proceeding conducted in open court. The court in *In re Rosahn* noted that where an alleged contemnor faces the possibility of imprisonment, the civil contempt proceeding carries with it "the same concerns and purposes that lead to the requirement of a public trial in the criminal context such as the need to assure accountability ..., the preservation of fairness and the enhancement of the public's confidence in the judicial system." 671 F.2d at 697. The court held that the witness's due process rights were violated when, despite her objection, the trial court ordered the entire contempt proceeding closed.

The same result was reached in *Matter of Fula*, 672 F.2d 279 (2d Cir.1982). There, the court held that civil contempt hearings should be closed to the public only to the extent necessary to preserve the secrecy of the grand jury process. Specifically, the witness was found to have been denied due process when the judge failed to open the contempt proceeding to the public following the reading of the grand jury minutes.

█ We believe that the Second Circuit's approach, which balances the need for secrecy in grand jury matters against important considerations favoring open judicial proceedings, is sound. We hold, therefore, that in a civil contempt proceed-

ing where an alleged contemnor faces possible incarceration, the proceeding may be closed to the public only to the extent that substantive grand jury matters are being considered; the remainder of the hearing must take place in open court. Because Backiel's due process rights were violated when, over her objection, the entire contempt proceeding was closed to the public, we will vacate the contempt order and remand so that the district court may conduct a contempt hearing which excludes the public only where necessary to preserve the secrecy of the grand jury process.[4]

Having determined that a second, albeit limited, contempt hearing must be held, we consider two additional issues raised by Backiel. We do so in order to clarify the scope of this second hearing and to obviate the need for continued consideration of claims raised repeatedly in this litigation.

## IV. Abuse of the Grand Jury Process

Backiel contends that the district court erred in denying her motion to quash the subpoena on grounds of abuse of the grand jury process. Backiel claims that there is no need for her testimony and that the prosecutor's efforts to compel this testimony are motivated by a desire to obtain evidence for use at trial and to punish Backiel for her efforts on behalf of those seeking independence for Puerto Rico. We find this argument to be without merit.

 In order to comply with our decisions in *Schofield I* and *Schofield II*, the government, seeking testimony of a witness in a grand jury proceeding, is required to file an affidavit establishing a nexus between the information sought and an ongoing investigation. As we noted in *Schofield II*, our holding in *Schofield I* "did not require any determination of probable

cause and it clearly did not require a hearing in every case. ... What *Schofield I* did require, however, was a minimum showing by affidavit in every case that each item sought was (1) relevant to an investigation; (2) properly within the grand jury's jurisdiction; and (3) not sought primarily for another purpose." *Schofield II*, 507 F.2d at 966.

 We agree with the district court's conclusion that the government's affidavit in this case satisfies our *Schofield* requirements. The document shows that the grand jury, in conducting a bail-jumping investigation, seeks to determine the disposition of handwritten documents left behind by the alleged fugitive. Prior testimony by other witnesses has established that Backiel was the last person known to have custody of the originals of these documents. As the documents describe the alleged fugitive's intent and motivation to flee, the government seeks to have them authenticated or to have their non-production explained. Having established the relevance of Backiel's testimony to a legitimate purpose, the government denies that the information described was sought for an improper purpose.[5]

 Backiel contends that because her testimony may impact upon her relationship with politically controversial clients, the government, already having heard testimony concerning the content of the documents in question, should be required to make a heightened showing of need for Backiel's testimony. We rejected a virtually identical argument in the case of an earlier witness in this matter and we reject it here.[6] "To impose additional requirements that the government show its need for the information sought and that the

---

4. Backiel's final adjudication of contempt should occur in open court. Although by the time of this second hearing all issues raised centering on just cause will have been resolved and need not be considered further, Backiel has the right to insist that the courtroom be opened so that the actual contempt, *i.e.*, her adherence to a refusal to answer questions before the grand jury, and the consequent adjudication, occur in public. *See In Re Bongiorno*, 694 F.2d 917 (2d Cir.1982).

5. In her brief supporting the motion to quash Backiel herself concedes that "the prosecution has submitted what might be a plausible legitimate reason for seeking the testimony of the witness...."

6. *See In re Grand Jury Matter (Chomsky)*, 879 F.2d 857 (3d Cir.1989) (MemOp), *reh'g denied*, No. 89–1405 (3d Cir. July 13, 1989).

[witness] is the only source for that information would hamper severely the investigative function of the grand jury, if not stop the grand jury 'dead in its tracks'." *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 248 (2d Cir.1985), *cert. denied sub nom. Roe v. United States,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). We agree with the reasoning of the court in *In re Grand Jury Proceedings,* 862 F.2d 430, 431–432 (2d Cir.1988):

> Requiring the government to show both that the information it hopes to obtain ... is significant and that that information is unavailable from other sources would obviously impair the efficiency of grand juries. Such a requirement would bring investigators to intermittent standstills as the government set out to prove the necessity of each piece of information it sought to obtain. Moreover, potential sources of information would be less likely to cooperate knowing that the information they impart, as well as their identities might be disclosed by the government in proving the necessity of obtaining further information.

The grand jury cannot be constrained to acquire only the minimum evidence necessary to secure an indictment and is free to pursue cumulative leads. Its task is to return only well founded indictments based upon convincing evidence. *See Branzburg v. Hayes,* 408 U.S. 665, 668, 92 S.Ct. 2646, 2650, 33 L.Ed.2d 626 (1972). How much information is "enough" is a matter for the judgment of the grand jurors and the prosecution rather than the court. *In re Grand Jury Investigation (Tinari),* 631 F.2d 17, 19–20 (3d Cir.1980) (per curiam), *cert. denied sub nom. Tinari v. United States,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981).

■ It is also well established that alleged inconvenience, economic hardship or moral beliefs "do not alter or provide a defense to [a witness'] duty to testify before the grand jury." *In re Crededio,* 759 F.2d 589, 593 n. 2 (7th Cir.1985); *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1975). The grand jury is entitled to every man's evidence. *Branzburg,* 408 U.S. at 668, 92 S.Ct. at 2650.

In sum, we find no abuse of the grand jury process in the issuance of the subpoena to Backiel and are satisfied that the trial court did not abuse its discretion in failing to require a heightened showing of need in connection with the *Schofield* affidavit. We have also carefully reviewed both the transcript of the grand jury proceedings and of the contempt hearing and find no merit to Backiel's claims that the prosecutor misled the grand jurors as to their power, prevented the grand jury from exercising its power, conveyed misinformation to the grand jury or misrepresented the grand jury's deliberations to the court. The substance of the prosecutor's statements in each of these areas was correct and we find nothing to support Backiel's claim of abuse of the grand jury process.

We, therefore, find nothing in any of Backiel's claims of grand jury abuse which constitutes "just cause" for her refusal to give testimony before the grand jury.

## V. Electronic Surveillance

Our review of this appeal requires us to resolve one remaining issue. Backiel contends that the government's allegedly inadequate response to her motion for electronic surveillance provides her with just cause for refusing to testify before the grand jury. In order to place this argument in context, we begin with the subpoena itself.

### A.

On August 29, 1989, one week after the testimony of another grand jury witness revealed that Backiel had possessed notes relevant to the on-going bail-jumping investigation, Backiel was served with a grand jury subpoena duces tecum calling for testimony and production of documents received from the prior witness in or around October, 1985. The testimony contemplated related to the content and disposition of these documents. On December 22, 1989, Ronald Levine, the Assistant United States Attorney in charge of the bail-jumping investigation, filed the required *Schofield* affidavit. The government expected

that Backiel would file a claim within the meaning of 18 U.S.C. § 3504, which provides in pertinent part:

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer agency, regulatory body, or other authority of the United States—

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act, the opponent of the claim shall deny the occurrence of the alleged unlawful act.

The government met this anticipated claim by including in its December 22nd affidavit a section 3504 denial of electronic surveillance. The section 3504 portions of the affidavit read as follows:[7]

8. This investigation is being conducted solely by the Federal Bureau of Investigation ("FBI"). The case agent for the investigation is FBI Special Agent Louis Vizi.

9. AUSA Lunkenheimer informs me that he is aware of no electronic surveillance within the meaning of 18 U.S.C. § 3504 conducted in connection with this investigation.

10. FBI Special Agent Louis Vizi informs me that he is aware of no electronic surveillance within the meaning of 18 U.S.C. § 3504 conducted in connection with this investigation.

11. Agent Vizi informs me further that according to records of electronic surveillance maintained by the Philadelphia office of the FBI, there is no record of electronic surveillance of Linda Backiel within the meaning of 18 U.S.C. § 3504 in connection with this investigation.

12. I am aware of no electronic surveillance within the meaning of 18 U.S.C. § 3504 conducted in connection with this investigation. Furthermore, the case file does not indicate the occurrence of any such electronic surveillance.

13. The questions to be put to Ms. Backiel are not derived, directly or indirectly, from unlawful electronic surveillance.

On January 16, 1990, Backiel filed a motion for disclosure of electronic surveillance. The motion covered the period from July, 1985 to the present and asked for disclosure of any and all voice records, tapes, mechanical or electronic, recordings, logs, memoranda, letters and articles of electronic surveillance of any communications: to which the witness was a party; at any place in which the witness had an "interest" at the time of the surveillance; at any place where the witness was at the time of the surveillance, in which the witness is named or otherwise referred to; one of the parties to which was Backiel's client, attorney, legal consultant or legal or clerical assistant; at any place in which any attorney, consultant or assistant associated with the representation of the grand jury witness or any client of the grand jury witness had an interest at the time of the surveillance; at any place put under surveillance for the purpose of gathering evidence or leads against any attorney, consultant or assistant associated with Backiel or any of her clients; at any place where Backiel's clients, attorneys, consultants or assistants associated with Backiel's representation were at the time of surveillance; and in which there is named or reference made to any of Backiel's clients or the attorney, consultant or assistant associated with the representation of the witness.

The motion contained a request that an order be entered directing the government to conduct a search of the files of every federal agency which conducts electronic surveillance and to produce the logs of any unidentified voices overheard at places where the witness or the clients of the attorneys had an expectation of privacy. The specific agencies which Backiel asked to have queried included FBI offices in New York, Hartford, New Haven, San Juan, Philadelphia and Chicago; police departments in New York City, Philadelphia,

---

7. The adequacy of this affidavit was upheld as to a prior witness before the grand jury in this investigation in *In re Grand Jury Matter (Chom-* *sky)*, No. 89–1405, 879 F.2d 857 (3d Cir. June 16, 1989) (Mem.Op. at 20 n. 6), *reh'g denied,* No. 89–1405 (3d Cir. July 13, 1989).

Hartford and West Hartford; Police of Puerto Rico, Intelligence Division, NIE and Criminal Division, any and all "Task Forces" or joint efforts involving the FBI and any local police or other agencies; the CIA; the Secret Service; Departments of the Army, Navy, and Air Force; any agency or individuals conducting electronic surveillance pursuant to any purported authority of the National Security Agency, the Department of the Treasury, the United States Marshal Service; and the Bureau of Prisons. The motion covered 28 telephone or telefax numbers in the United States and Puerto Rico.

To support her contention that she has been subjected to electronic surveillance, Backiel cited variations in sound volume, poor transmission, and instances where she has overheard conversations between others. She also contends that the FBI agents who served the grand jury subpoena must have engaged in electronic or physical surveillance because they were able to serve the subpoena at her residence, an address which she does not use for business. Backiel also states the belief that she had telephone conversations with the subject of the bail-jumping investigation which were intercepted by the Bureau of Prisons between May and October of 1985.

Backiel argued that the government's section 3504 affidavit was insufficient in that the denial of electronic surveillance was limited to surveillance "in connection with this proceeding" and to surveillance "within the meaning of § 3504." Backiel contended that the government was required unqualifiedly to affirm or deny the occurrence of any electronic surveillance and to check, not one agency, but multiple government agencies which may engage in surveillance.

The district court found the government's section 3504 denial of surveillance adequate and denied Backiel's motion for disclosure. Backiel subsequently filed a renewed and supplemental motion for disclosure of electronic surveillance, requesting that the government make known to her all electronic surveillance conducted at her residence and office in Puerto Rico from February 15, 1990 to the present. She contended that after she had given her sister's name to the telephone company in Puerto Rico in connection with installation of her telephone, her sister in Colorado was interviewed, under allegedly suspicious circumstances, by FBI agents investigating another matter.

The government responded to this motion, stating that while it believed its original section 3504 denial of surveillance to be adequate, it would, "in an abundance of caution," file supplemental affidavits. The Assistant United States Attorney reiterated the information set forth in the original affidavit and a separate document was executed by the FBI case agent in charge of the bail-jumping investigation. The agent averred that he was unaware of any section 3504 electronic surveillance conducted in connection with these investigations nor had he ever been made aware of any electronic surveillance of Linda Backiel within the meaning of section 3504 in any other investigation. The agent stated that no record existed in the Philadelphia office of the FBI of any surveillance of Backiel within the meaning of section 3504. He denied having been aware that Backiel had a sister or of any contact which the FBI may have made with the sister. Finally, the agent denied having provided the Assistant United States Attorney with any information concerning the investigation of another alleged fugitive except to confirm for him that Mary Backiel had been interviewed in Colorado in connection with another investigation. Finally, he affirmed that issuance of Backiel's grand jury subpoena came immediately after a prior witness' testimony before the grand jury in August, 1989.

The district court denied Backiel's supplemental motion for disclosure of surveillance. In this appeal, Backiel contends that the district court erred in denying her motions for disclosure and that the government's failure to respond to her request for disclosure of illegal electronic surveillance constitutes just cause for her refusal to testify before the grand jury.

### B.

It is well settled that the government's failure to respond adequately to a claim of electronic surveillance constitutes just cause for refusal to comply with an order to provide evidence before a grand jury. *Gelbard v. U.S.*, 408 U.S. 41, 52, 92 S.Ct. 2357, 2363, 33 L.Ed.2d 179 (1972); *In re Grand Jury Matter No. 82–1305*, 683 F.2d 66 (3d Cir.1982). "When a grand jury witness raises the issue of possible electronic surveillance as the source of a subpoena or questions, the government is bound to affirm or deny the occurrence of such surveillance." *In the Matter of Grand Jury Impaneled Jan. 21, 1975*, 529 F.2d 543, 549 (3d Cir.1976).

Our focus in this appeal is upon the adequacy of the government's denial of illegal surveillance. The jurisprudence demonstrates that courts generally have adopted a fluid approach, evaluating the adequacy of the government's denial in the context of the facts of the particular case. "Hard and fast rules are scarce." *In the Matter of the Grand Jury (Vigil)*, 524 F.2d 209, 222 (10th Cir.1975), *cert. denied sub nom. Freedman v. United States*, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976). We believe that any attempt to establish absolute requirements to be applied rigidly in every case would be counterproductive; an approach which balances, in each case, the right of the individual to be free from unwarranted surveillance against the efficient functioning of the grand jury system is preferable and more likely to yield a just result. The district court must be accorded some latitude in evaluating claims of illegal surveillance and the government's response to these claims. *See United States v. Stevens*, 510 F.2d 1101 (5th Cir.1975); and *Matter of Grand Jury (Vigil)*, 524 F.2d at 216.

In enacting the wiretap legislation embodied in 18 U.S.C. §§ 2515 and 3504, Congress intended to provide safeguards against invasion of the privacy interest secured by the fourth amendment. Section 3504 was drafted to provide procedures by which a witness may attempt to demonstrate that the questions posed to him fail to comply with the mandate of section 2515 which proscribes the use in any official proceeding of evidence tainted by illegal surveillance. *Whitnack v. United States*, 544 F.2d 1245, 1247 (9th Cir.) (Kennedy, concurring). *See also In re Grand Jury Proceedings (Hermann)*, 664 F.2d 423, 427 (5th Cir.1981). While we recognize the importance of the mechanism provided in section 3504, we are also mindful of the great potential "inherent in a § 3504 motion for deliberate delay and hindrance of grand jury proceedings by a recalcitrant witness." *Id.*

The decisions of our sister circuits establish the general proposition that the adequacy of the government's section 3504 denial depends upon the specificity of the witness' allegations of illegality. *See In re Grand Jury 11–84*, 799 F.2d 1321, 1324 (9th Cir.1986) (specificity and amount of evidence required of the government in denying electronic surveillance varies with the strength of the witness' allegations and support for the allegations); *In re Grand Jury Proceedings (Hermann)*, 664 F.2d at 427 (in Fifth Circuit, adequacy of the government's denial of electronic surveillance is dependent upon the specificity of the witness' allegation of illegality); *In re Millow*, 529 F.2d 770, 775 (2d Cir.1976) (not every accusation of misconduct by the prosecution requires a detailed response by government agencies to determine their participation in any wrongdoing); *In the Matter of Grand Jury (Vigil)*, 524 F.2d at 216 (Tenth Circuit held that each case presents individual demands); and *In re Mintzer*, 511 F.2d 471 (1st Cir.1975) (nonspecific denial permitted where party asserting illicit surveillance makes a general unsubstantiated allegation of unlawfulness). We were in agreement in *United States v. D'Andrea*, 495 F.2d 1170 (3d Cir.), *cert. denied*, 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974) (government's unsworn denial sustained where witness had presented no more than a bald accusation of illegality).

Bearing in mind that section 3504 was designed to protect a witness from being subpoenaed or asked questions based on

illegal electronic surveillance, we turn to those allegations raised by Backiel which support her contention that either the subpoena itself or the questions posed were the product of illegal surveillance. Only after we have examined these allegations can we evaluate the adequacy of the government's section 3504 denial.

### C.

 There are only three allegations contained in either of Backiel's motions for disclosure which arguably relate to the substance of the grand jury subpoena or the questions asked. First Backiel contends that the FBI's service of the subpoena at her residence is proof of the fact of surveillance. We find this contention meritless. As the district court noted,

[I]t would be a great leap to derive, merely from the fact that Backiel was served at her home, the conclusion that she must have been the subject of electronic surveillance. Certainly the FBI has other methods at its disposal to learn the home address of the recipient of a grand jury subpoena, especially if that recipient is an officer of the court and the holder of a professional license.

*In re Grand Jury Matter (Backiel)*, No. 85–759–7, slip op. at 10 (E.D.Pa. March 20, 1990).

 Next, Backiel contends that she believes that she had telephone conversations with the subject of the bail jumping investigation which were electronically intercepted by the Bureau of Prisons between May, 1985 and October, 1985. This allegation is based upon the witness' experience with clients detained at the Metropolitan Correctional Center in New York, where she alleges that all conversations are monitored by the Bureau of Prisons. The subject of the investigation was not, however, in the custody of the Bureau of Prisons during the relevant time period but was housed in the Philadelphia prison system. The government has averred that the Philadelphia detention center does not engage in

electronic surveillance and Backiel has not challenged this statement.

 Finally, Backiel alleges that the grand jury subpoena issued in this matter was the product of an effort to punish her for her work on behalf of those seeking independence for Puerto Rico. This allegation is wholly unsupported and ignores the fact that Backiel was subpoenaed almost immediately after a prior grand jury witness testified that the chain of custody of relevant documents ended with Backiel.

Backiel's supplemental motion for disclosure mentions the events at issue in this case only once. All other allegations of electronic surveillance set forth in support of her motion relate to her work representing other defendants and other events completely outside the scope of this investigation.

Furthermore, neither motion for disclosure sets forth any allegation indicating that any agency other than the FBI had any reason or occasion to place Backiel under surveillance. In sum, Backiel's allegations of electronic surveillance are merely conclusory and fail to raise any supportable inference that the subpoena itself or the questions propounded before the grand jury were the result of illegal electronic surveillance.

Responding to these general allegations, the government filed the sworn affidavits detailed above. We believe that, in the context of this case, the government's section 3504 denial was adequate. In the affidavits submitted, the Assistant United States Attorney and the FBI case agent denied any knowledge of surveillance of Linda Backiel in connection with this investigation.[8] The government further averred that none of the grand jury's questions were in any way derived from illegal electronic surveillance. Finally, a check was made of the only FBI office connected with the bail-jumping investigation and no record of any such surveillance exists.

---

**8.** The government states in its brief that this denial encompasses both instances of legal and

illegal electronic surveillance.

It is particularly significant to note that Backiel does not challenge the truth of the averments contained in the government's affidavit. In the memorandum in support of her motion for disclosure Backiel states that "there is no reason to doubt the truth and good faith of [the] assertion" by the Assistant United States Attorney that he is not aware of any electronic surveillance, legal or otherwise. If the Assistant United States Attorney was unaware of electronic surveillance, it is impossible to imagine how the subpoena issued at his request and the questions propounded before the grand jury could have been fatally tainted. Possible taint is especially unlikely here where the nexus between facts developed by prior grand jury witnesses and the subpoena issued to Backiel is clear.

Backiel's reliance on *United States v. Weiner,* 418 F.Supp. 941 (M.D.Pa.), *aff'd,* 546 F.2d 420 (3d Cir.1976), is misplaced. In requiring that the government's section 3504 denial be more specific than what we have demanded here, Judge Nealon noted that his section 3504 analysis was specific to the facts of that case. *Weiner* was an outgrowth of the "Patty Hearst case." Prefacing the discussion of section 3504, the court wrote:

> This is not a normal case of limited interest involving routine investigative efforts. . . . The possibility that extraordinary measures such as electronic surveillance were used in the investigation seems greater than in most cases. . . . [I]t would seem that the government's response should be as unambiguous, unequivocal, and reliable as reasonably possible, and should be more dispositive of the possibility of electronic surveillance than in a less extraordinary case. In the usual case which does not have any significance extending beyond this district, the affidavits of the U.S. Attorney and the F.B.I. Agent in charge of the case may suffice. . . .

*Id.* at 944. The court also noted that the case before it did not involve witnesses resisting appearing before an on-going grand jury and thus did not present the delay problems which might result were this the case.

Despite Backiel's arguments to the contrary, this bail-jumping investigation does not rise to the level of national import as the investigation in *Weiner,* nor does it present the same likelihood of abuse of electronic surveillance. We read *Weiner* as additional support for the proposition that the specificity required in the government's section 3504 denial is dictated by the circumstances of the particular case. Where the allegations of surveillance are specific enough to raise a legitimate inference that the proceedings at issue have been tainted or where the nature of the case is such that the likelihood of illegal surveillance is strong, a more detailed and more specific section 3504 denial will be required. Neither factor is present in the case now before us.

We think it clear that Backiel is not entitled in this proceeding to require the government to produce records of any surveillance which may ever have occurred. While we recognize the potential for abuse inherent in law enforcement use of electronic surveillance and the important role of section 3504 in exposing and preventing this abuse, section 3504 is not a discovery tool to be used to determine the existence or validity of wiretaps completely unrelated in time or substance to the on-going proceeding; it was never intended that this section be used by a witness to thwart the progress of a grand jury investigation by the mere conclusory and unsubstantiated assertion of illegal surveillance. *United States v. Stevens,* 510 F.2d at 1105–1106. Here, where the allegations fail to raise even a suspicion of illegal electronic surveillance in connection with Backiel's appearance before the grand jury, requiring the government to respond in the detail requested would place an undue burden on the grand jury process; a claim of illegal electronic surveillance must be specific, concrete and relevant in order to demand a more detailed response. We conclude "that at this proceeding all that can be required is that those conducting the grand jury proceeding affirm that they have no knowledge of and have not in any way employed other taps in formulating lines of

inquiry or questions to be posed to the witness." *In re Mintzer,* 511 F.2d at 472 n. 2.

### Conclusion

The civil contempt proceedings held before the district court were free from error except for the court's failure to conduct some portions of the hearing and the actual adjudication of contempt in open court. Because we conclude that civil contempt proceedings relating to grand jury matters must be open to the extent that they do not impinge upon the secrecy of the grand jury, the order of the district court adjudging Linda Backiel in contempt will be vacated and the case remanded to the district court for the purpose of affording Backiel the opportunity to reiterate in public her anticipated refusal to answer questions before the grand jury and to have the consequent adjudication of contempt occur in open court.